Patricia PRICE and Bobby Price,
her husband, Plaintiffs
Below, Appellants,

v.

E.I. DuPONT DE NEMOURS
& COMPANY, Defendant
Below, Appellee.

No. 719, 2009.

Supreme Court of Delaware.

Submitted: May 4, 2011.
Decided: July 11, 2011.

Thomas C. Crumplar (argued) and Jordan J. Ponzo, Jacobs & Crumplar, P.A., Wilmington, Delaware for appellants.

John C. Phillips, Jr., Goldman & Spence, P.A., Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, Justices and KUHN, Chief Judge * constituting the court en banc.

---

\* Sitting by designation pursuant to Del. Const. Art. IV § 12.

1. The Prices filed the Complaint as co-plaintiffs, but Mr. Price's only claim is for loss of

STEELE, Chief Justice for the Majority:

Patricia Price appeals from a Superior Court order denying her Motion to Amend her household asbestos exposure complaint as futile. Because the allegations in Price's amended complaint amount to a claim against DuPont for nonfeasance, and the complaint does not allege any "special relationship" between Price and DuPont, her proposed amendments, if allowed, would be futile. Therefore, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Bobby Price worked as a maintenance technician for E.I. du Pont de Nemours & Co. at its Chestnut Run facility from 1957 until 1991. During his employment, Mr. Price worked with and around products containing asbestos. Allegedly, Mr. Price transported asbestos fibers home on his clothing, vehicle, and skin. Patricia Price, his wife, alleges that years of living with her husband, and handling and washing his work clothes, exposed her to the fibers. Mrs. Price now suffers from bilateral interstitial fibrosis and bilateral pleural thickening of the lungs. These maladies, it is claimed, present directly from her exposure to the asbestos dust and fibers her husband brought home from work.

On June 8, 2009, Mrs. Price[1] filed a complaint against DuPont and several other parties. The Household Exposure section of her original complaint relevantly alleges:

11. Plaintiff PATRICIA PRICE suffered household exposure as a result of a release of toxic asbestos fiber by de-

---

consortium, the existence of which is predicated on Mrs. Price having a valid claim for relief. Therefore, from this point on, we refer solely to Mrs. Price as the Plaintiff.

fendant E.I. DuPont De Nemours & Co., Inc.

12. Plaintiff PATRICIA PRICE suffered household exposure in the course of living with her husband. From April 1957 through 1991 her husband worked with and around asbestos and asbestos containing products at the DuPont Chestnut Run plant. The asbestos fibers were then released into the family home on his clothes and his person where PATRICIA PRICE was a resident. As a result, Plaintiff PATRICIA PRICE was repeatedly exposed to, inhaled, ingested, and otherwise absorbed asbestos fibers released from the DuPont Chestnut Run plant, where her husband was employed.

13. In addition to exposure that occurred as a result of asbestos fibers brought home and being deposited in the house from the clothes of her husband, Plaintiff PATRICIA PRICE was exposed in the course of handling and washing her husband's asbestos fiber containing dusty work clothes. As a result, Plaintiff PATRICIA PRICE was repeatedly exposed to, inhaled, ingested and otherwise absorbed fibers released from the DuPont Chestnut Run plant where her husband was employed.

14. Plaintiff PATRICIA PRICE's husband was a maintenance technician at the DuPont Chestnut Run plant and worked with and around asbestos and asbestos containing products.

15. Plaintiff Bobby Price unsafely worked, with and around asbestos and asbestos containing products at E.I. DuPont De Nemours Co & Inc. This covered his work clothes and person which he brought into the household, causing exposure to Plaintiff PATRICIA PRICE. Plaintiff PATRICIA PRICE laundered BOBBY PRICE's clothing

which also caused asbestos exposure to Plaintiff PATRICIA PRICE.

16. Plaintiff's [sic] allege that Defendant E.I. DuPont De Nemours Co. & Inc., committed active, affirmative misconduct by wrongfully releasing asbestos from its plant and exposing Plaintiff PATRICIA PRICE, a reasonably foreseeable victim to it's [sic] toxic asbestos fibers.

On July 9, 2009, in light of this Court's decision in *Riedel v. ICI Americas Inc.*,[2] Price filed a Motion to Amend her complaint. Specifically, Price sought to change the text of paragraphs 11, 12, 15, and 16 to allege misfeasance, as follows:

11. Plaintiff PATRICIA PRICE was exposed within her home as [a] result of the release by E.I. DuPont & Company of toxic asbestos fibers within the Chestnut Run Facility and outside the Chestnut Run Facility. This release was done negligently, willfully, wantonly, and intentionally as a result of the DuPont Company's understanding of the dangers of asbestos when released within and without their [sic] facility. These releases were the direct result of positive actions and knowing actions of the DuPont Company.

12. PLAINTIFF PATRICIA PRICE suffered home exposure in the course of living with her husband from April 1957 through the year 1991. Her husband worked at the DuPont Chestnut Run Facility and by being on the facility and being off the facility around its perimeter was exposed to asbestos fibers released from the materials ordered by the DuPont Company and under whose direction the materials [were] either installed or removed. These actions by the DuPont Company released asbestos

2. 968 A.2d 17 (Del.2009).

fibers. The asbestos fibers that were within the facility settled on all equipment, walkways, vehicles and persons who were within the facility during these years and escaped beyond the borders of said facility due to the natural pollution of the surrounding areas by water, wind and similar means of transportation. As a result of DuPont's direct negligent, willful and/or wanton or intentional conduct in the manner and mode of its ordered use of asbestos materials, asbestos fibers were released into the air. The fibers settled on PLAINTIFF BOBBY PRICE, on his private vehicle and onto the vehicles of his co-workers and both within the facility and beyond the borders of said facility. The asbestos fibers were transported by PLAINTIFF BOBBY PRICE and his vehicle and clothing to its final destination, his home. As a result of this transport, the asbestos was deposited within the home both from his vehicle and from his clothes and distributed through a laundry facility and home by PLAINTIFF BOBBY PRICE to his wife, PLATINTIFF PATRICIA PRICE. PLAINTIFF BOBBY PRICE did not understand that these fibers were on his vehicle and clothing and would cause PLAINTIFF PATRICIA PRICE to be repeatedly exposed to the asbestos fibers in her own home. Nor that PLAINTIFF PATRICIA PRICE would inhale, ingest and absorb said asbestos fibers. These fibers emanated from the DuPont Chestnut Run Facility only as a result of the intentional, negligent and/or willful and wanton method that the DuPont Company required its employees and/or employees of its contractors to handle the materials releasing the fibers into the air both within the facility's and the outside of the facility borders. Defendant DuPont knew or should have known that the times that said asbestos containing products were being utilized within its own plant, by its own employees and/or others, that they were friable and prone to release asbestos fibers within the air and contaminate the facility and the areas surrounding the facility. DuPont knew or should have known that the asbestos fibers would be transported by any vehicle or by the air beyond the facility and, thus, causing [sic] a pollution of the Plaintiff's home resulting in the disease complained of by PLAINTIFF PATRICIA PRICE.

. . .

15. PLAINTIFF BOBBY PRICE, as a direct result of the DuPont Company's directives and instructions, unsafely worked with asbestos products or around asbestos products which the DuPont Company, knew or should have known, would be deposited on his work clothes at the E.I. DuPont Nemours Facility and in the streets and areas surrounding said facility without ordering a containment of the polluting asbestos. Thus the asbestos escaped from the facility and was carried beyond the plant to PLAINTIFFS home. DuPont knew or should have known persons within PLAINTIFF BOBBY PRICES home would be exposed and contaminated by the asbestos fibers and, at clear risk to contract the diseases caused by asbestos. It was foreseeable that its employees' families including the employee's wife and children would handle the clothing and/or be within the vehicle which would have been contaminated with asbestos both within the facility and from asbestos fibers transported. This intentional, negligent, willful and/or wanton acts [sic] that were transported by air, water or other means to areas around DuPont's facility.

16. Plaintiffs allege that E.I. DuPont de Nemours' conduct was affirmative, active misconduct because it was only through the direct orders and desires of the DuPont Company that the fibers were released within its plant and not contained within its plant and escaped beyond the plant to pollute not only the surrounding area beyond the plant and everything within the facility, but be [sic] foreseeably transported to the homes and businesses of Plaintiff and the invitees of the DuPont Company.

On July 21, 2009, DuPont filed an opposition to Price's Motion to Amend on the basis that the proposed amendments, even if allowed, would fail to state a claim for misfeasance and, therefore, be legally futile. DuPont contended that as a matter of substance the amended complaint alleges nonfeasance—not misfeasance. In order to recover for nonfeasance, a plaintiff must specifically allege a "special relationship" between herself and the defendant. Having not alleged any "special relationship" in this case, DuPont argues, Price's amendments are futile because they fail to state a claim as a matter of law.

The parties argued their positions on the Motion to Amend on August 20, 2009 before a Special Master. On August 25, the Special Master issued a written ruling, finding the motion to be futile. Price filed an Exception to the Special Master's report on September 1, 2009. On November 20, 2009, a Superior Court judge affirmed and embodied the Special Master's judgment in a Memorandum Opinion and Order. On January 7, 2010, a Superior Court order certified the November 20 Memorandum Opinion and Order for interlocutory appeal. On January 8, 2010, Price appealed from that judgment.

## II. STANDARD OF REVIEW

■■■ A motion for leave to amend a complaint is futile where the amended complaint would be subject to dismissal under Rule 12(b)(6) for failure to state a claim.[3] We review the grant of a Rule 12(b)(6) motion to dismiss *de novo* to "determine whether the trial judge erred as a matter of law in formulating or applying legal precepts."[4] In that context, we view the complaint in the light most favorable to the non-moving party, accepting as true all well pleaded allegations and drawing reasonable inferences that logically flow from them.[5] We decline, however, to accept conclusory allegations unsupported by specific facts or to draw unreasonable inferences in favor of the non-moving party.[6]

## III. ANALYSIS

■■■ To prevail on a negligence claim, a plaintiff must prove that: a defendant owed her a duty of care, the respondent breached that duty, and the breach proximately caused an injury.[7] Whether a duty exists is a question of law for this Court.[8] To determine whether one party owed another a duty of care, we have often looked to the Restatement (Second) of Torts for

---

**3.** *See FS Parallel Fund, L.P. v. Ergen,* 2005 WL 1950199, at *2 (Del.2005) (ORDER) (referring to the operation of Court of Chancery Rule 12(b)(6), which is identical to Superior Court Rule 12(b)(6)).

**4.** *Clinton v. Enterprise Rent–A–Car Co.,* 977 A.2d 892, 895 (Del.2009) (quoting *Feldman v. Cutaia,* 951 A.2d 727, 730–31 (Del.2008)).

**5.** *Id.*

**6.** *Id.*

**7.** *Riedel v. ICI Americas Inc.,* 968 A.2d 17, 20 (Del.2009) (citing *New Haverford P'ship v. Stroot,* 772 A.2d 792, 798 (Del.2001)).

**8.** *Id.* (citing *Naidu v. Laird,* 539 A.2d 1064, 1070 (Del.1988)).

guidance.[9] According to the Restatement, negligent conduct involves either (1) "an act which the actor as a reasonable man should recognize as involving an unreasonable risk of causing an invasion of an interest of another," (commonly described as misfeasance), or (2) "a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do" (commonly described as nonfeasance).[10]

■ In the case of misfeasance, the party who "does an affirmative act" owes a general duty to others "to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the [affirmative] act."[11] But, in the case of nonfeasance, the party who "merely omits to act" owes no general duty to others unless "there is a special relation between the actor and the other which gives rise to the duty."[12] Therefore, in a case involving misfeasance, the defendant's duty is automatic, whereas in a case involving nonfeasance, the defendant's duty arises only if there is a legally significant "special relationship" between the parties.

■ The underlying facts of this case are essentially the same as those underlying *Riedel v. ICI Americas Inc.*, which we decided several years ago. In that case, Mr. Riedel worked at a facility where his employer, ICI, used asbestos in a variety of settings. ICI never supplied uniforms, locker rooms, or laundry facilities to employees. Mr. Riedel wore his work clothes home, and Mrs. Riedel regularly washed the work clothes which, she alleged, "often appeared to be covered with an unknown dusty material."[13] After decades of washing Mr. Riedel's work clothes, Mrs. Riedel developed asbestosis.[14] She filed a complaint against ICI alleging negligence. ICI moved for summary judgment, and the trial judge granted summary judgment to ICI on the basis that Mrs. Riedel had claimed nonfeasance by ICI and that she had failed to prove any "special relationship" between herself and ICI.[15]

Mrs. Riedel appealed from the Superior Court's judgment, which we ultimately affirmed. In our opinion, we explained how, at trial, Mrs. Riedel presented only a theory of nonfeasance—not misfeasance.[16]

9. *Id.* (citing *Furek v. Univ. of Delaware*, 594 A.2d 506, 520 (Del.1991)). In *Riedel*, we declined to adopt the proposed Restatement (Third) of Torts provisions relevant to these facts.

10. *Id.* at 22 (quoting RESTATEMENT (SECOND) OF TORTS § 284 (1965)).

11. *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 302 cmt. a).

12. *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 302 cmt. a).

13. *Id.* at 19.

14. *Id.*

15. *Id.* at 23 ("Although the trial judge did not explicitly address whether Mrs. Riedel alleged misfeasance or nonfeasance, he considered Mrs. Riedel's claim in a manner consistent with the (Second) Restatement's analysis of nonfeasance.").

16. *Id.* at 25 ("[W]e are not persuaded by Mrs. Riedel's assertion that she pled misfeasance in Count II of her complaint. Referring to ICI, Count II states: 'Her husband's employers controlled the safety and working conditions and/or promoted the use of asbestos, at the sites where the plaintiff's husband worked, including the use, installation, and removal of asbestos and asbestos-containing products.' This allegation merely supports Mrs. Riedel's theory at trial that ICI acted with misfeasance in relation to Mr. Riedel (by exposing him to asbestos) and with nonfeasance in relation to Mrs. Riedel (by failing to control Mr. Riedel[ ])[.]").

Moreover, as we explained, on appeal, Mrs. Riedel presented a theory of misfeasance by attempting to recharacterize her claim *without alleging any new facts.*[17]

The legal issue presented in *Riedel* was whether ICI committed misfeasance affecting Mrs. Riedel. As a technical procedural matter, we did not decide the substantive issue directly, but rather affirmed the judgment pursuant to Supreme Court Rule 8 because Mrs. Riedel attempted to present arguments on appeal that she had never presented to the trial judge.[18] In so doing, we acknowledged that she was attempting to present the same facts and call them misfeasance, but we declined to decide whether that characterization was indeed possible. Despite declining to decide that issue, however, we clearly articulated that the underlying facts did support a claim for nonfeasance and that her Complaint alleged only nonfeasance.[19] For example, in the opinion, we wrote:

> At trial, Mrs. Riedel characterized ICI's alleged negligence as a failure either to prevent Mr. Riedel from taking asbestos home or to warn the Riedels of the dangers associated with Mr. Riedel

wearing his work clothes home from the workplace. That is, to the trial judge Mrs. Riedel presented a theory of nonfeasance.[20]

To reiterate, although, in *Riedel,* we did not decide whether the facts underlying Mrs. Riedel's claim could support a misfeasance claim in addition to a nonfeasance claim, we did explain unequivocally that the facts underlying Mrs. Riedel's claim constituted nonfeasance.[21]

In this case, the issue and the underlying facts are identical to those presented in *Riedel.* The legal issue here is whether DuPont committed misfeasance affecting Mrs. Price. The conduct Mrs. Price complains of here is indistinguishable from the conduct about which Mrs. Riedel complained. It constitutes nonfeasance, and because nonfeasance and misfeasance describe substantively different conduct, nonfeasance cannot constitute misfeasance. Although Price's desired amendment attempts to recast DuPont's conduct as affirmative misfeasance, legal characterizations cannot change the nature of the underlying conduct.

---

17. *Id.* at 23 ("Now, however, she claims that ICI's affirmative release of asbestos into the environment constitutes misfeasance. To us, Mrs. Riedel claims that '[t]here is simply no principled way to distinguish ICI's asbestos release on its employee's clothes with another entity's release of a deadly toxin via another vector such as the air.' She asserts that 'ICI did nothing less than actively release asbestos toxins out of its plant and into Mrs. Riedel's home.' ").

18. *Id.* at 25 ("Because Mrs. Riedel did not fairly present her current theory of misfeasance to the trial judge, Supreme Court Rule 8 precludes her from arguing to us that the trial judge erred by [considering her claim as nonfeasance].").

19. *See supra* note 16. *See also Riedel,* 968 A.2d at 23 ("Although the trial judge did not explicitly address whether Mrs. Riedel alleged

misfeasance or nonfeasance, he considered Mrs. Riedel's claim in a manner consistent with the (Second) Restatement's analysis of nonfeasance.... [O]ur review of the record leads us to agree with the trial judge's conclusion.").

20. *Id.* at 23.

21. The dissent maintains that "[t]he *Riedel* Court never decided whether Riedel's claim was properly characterized as nonfeasance." We disagree. The *Riedel* court made clear that her claim did indeed constitute nonfeasance. The only issue the *Riedel* court never decided was whether her claim could *also* constitute misfeasance by using alternative pleading semantics. Consequently, any decision that characterizes those same underlying facts as only misfeasance, but not nonfeasance—as the dissent does—we believe to be inconsistent with our *Riedel* opinion.

Here, Mrs. Price's allegations, stripped of all reformatory recharacterization, are that: (1) Mr. Price, an employee of Du-Pont, worked with and around products containing asbestos for 34 years, (2) asbestos fibers settled on his skin, clothing, and vehicle, (3) DuPont did not provide locker rooms, uniforms, or warnings to the Prices regarding the dangers of asbestos, (4) Du-Pont did not prevent Mr. Price from transporting the asbestos fibers home on his skin, clothing, and vehicle, and (5) Mrs. Price, because she lived with Mr. Price and washed his clothes, developed several diseases from her exposure to the asbestos he brought home from work. These allegations generate a reasonable inference that DuPont wrongfully (negligently) failed either to prevent Mr. Price from taking asbestos home or to warn the Prices of the dangers associated with Mr. Price wearing his work clothes home. That, according to our *Riedel* opinion, is pure nonfeasance—nothing more.[22]

Although Price recasts her amended complaint in an effort to allege misfeasance, the amendment is predicated on exactly the same underlying facts earlier claimed to be nonfeasance. Dupont's failures to prevent Mr. Price from taking asbestos fibers home or to warn the Prices about the dangers of asbestos do not rise to the level of affirmative misconduct required to allege a claim of misfeasance. No amount of semantics can turn nonfeasance into misfeasance or *vice versa*.[23]

Having alleged only nonfeasance, to recover against DuPont, Price must allege that a "special relationship" existed between her and DuPont in order for Du-Pont to owe her a duty of care.[24] The relationship between Mrs. Price and Du-Pont does not fit any of the Restatement's recognized "special relationships" giving rise to a duty to aid or protect.[25] In *Riedel*, we determined that Mrs. Riedel had no "special relationship" with ICI even though she claimed that her status as the spouse of a long term ICI employee, ICI's provision of health benefits to her, and ICI's publication of a brochure with home safety advice for employees' families, were sufficient bases on which to find a "special relationship."[26]

Similarly, Mrs. Price has not alleged any "special relationship" in her original com-

**22.** *Id.*

**23.** Shakespeare explained, "What's in a name? [T]hat which we call a rose/By any other name would smell as sweet...." ROMEO AND JULIET act 2, sc. 2. So, too, it is with nonfeasance, which no complainant can transform into misfeasance merely by using different descriptors.

**24.** RESTATEMENT (SECOND) TORTS § 302 cmt. a ("The duties of one who merely omits to act ... in general are confined to situations where there is a special relation between the actor and the other which gives rise to the duty.").

**25.** *See* RESTATEMENT § 314A (listing common carriers with respect to their passengers, inn-keepers with respect to their guests, possessors of land who hold it open to the public with respect to the entering public, and peo-

ple who take custody of others, whether by law or voluntarily, with respect to those over whom they assume custody, as "special relations" giving rise to a duty to aid or protect). *See also* RESTATEMENT § 314 cmt. a (explaining other "special relationships" including when an actor has control of a third person or of land or chattels that gives rise to a duty to exercise that control, when an actor's prior conduct created a situation of peril to another party and gave rise to a duty to prevent harm to that other party, and when an actor has committed himself to the performance of an undertaking and therefore accepts a duty of reasonable care for the protection of another party in the conduct of that undertaking).

**26.** *Riedel*, 968 A.2d at 26–27 ("The trial judge concluded that Mrs. Riedel and ICI are 'legal strangers in the context of negligence.' We agree.") (quoting *In re Asbestos Litig.*, 2007 WL 4571196, at *12 (Del.Super.2007)).

plaint or proposed amended complaint, nor has she pleaded any facts that inferentially give rise to a "special relationship." Before us, Price argues that she had a "special relationship" with DuPont because her husband worked for DuPont for over thirty years, DuPont provided health insurance to her as Mr. Price's spouse, and DuPont sponsored company picnics and participated in programs promoting a family friendly workplace. These arguments are no different than from those Mrs. Riedel argued. Indeed, Mrs. Price stands in relation to DuPont almost squarely as Mrs. Riedel stood in relation to ICI. Because Mrs. Price and DuPont did not share a "special relationship," DuPont owed Price no legal duty.

## IV. CONCLUSION

DuPont's failure to prevent Mr. Price from transporting asbestos fibers home on his clothing and vehicle and failure to warn the Prices about the dangers of asbestos constitute nonfeasance. Attempts to recharacterize that underlying conduct as misfeasance cannot change the nature of the conduct, which is what determines the nature of the duty (if any). In cases of nonfeasance, no duty of care exists between the parties unless a "special relationship" between them gives rise to one. Because Mrs. Price and DuPont shared no "special relationship," DuPont owed Mrs. Price no duty. Therefore, the trial judge correctly denied Price's Motion to Amend her complaint on grounds of futility. The judgment of the Superior Court is affirmed.

BERGER, Justice, dissenting, with KUHN, Chief Judge, joining:

The majority begins with a brief statement of the difference between misfea-sance and nonfeasance. Then, it demonstrates that the facts alleged in this case are the same as the facts alleged in *Riedel.* Finally, because Riedel characterized her claim as one for nonfeasance, the majority concludes that Price's factually identical claim is one for nonfeasance. The problem with the majority's opinion is that *Riedel* never considered whether the allegations stated a claim for nonfeasance or misfeasance. Without any "reformatory recharacterization" by the parties or the Court, the facts alleged by Price and Riedel constitute misfeasance. Accordingly, Price should be allowed to pursue her claim.

### *Riedel Did Not Analyze Misfeasance vs. Nonfeasance*

The *Riedel* Court never decided whether Riedel's claim was properly characterized as nonfeasance. Riedel had proceeded on a theory of nonfeasance in the trial court. Consistent with that theory, she alleged, for example, that ICI failed to warn about the danger of taking asbestos home on one's clothing. Riedel attempted to recharacterize her claim on appeal, arguing that it was a claim of misfeasance. This Court rejected that effort, not because the facts would not support a claim of misfeasance, but because Riedel never raised the issue in the trial court:

> Because Mrs. Riedel presented a theory of negligence grounded in nonfeasance to the trial judge and did not fairly present a claim of misfeasance, she is precluded from arguing on appeal that the trial judge erred by analyzing ICI's summary judgment motion in terms of nonfeasance.[27]

Considering the claim to be one of nonfeasance, this Court addressed only the "al-

---

**27.** *Riedel v. ICI Americas Inc.,* 968 A.2d 17, 19 (Del.2009).

ternative argument that [Riedel] and ICI shared a legally significant relationship." [28]

The majority transforms *Riedel's* adherence and citation to "the well settled rule which precludes a party from attacking a judgment on a theory which was not advanced in the court below," [29] into a decision on the very issue *Riedel* did not consider—whether a so-called "take home" asbestos claim is properly characterized as a claim of misfeasance or nonfeasance.

### The Factual Allegations State a Claim of Misfeasance

Misfeasance is "an act which the actor as a reasonable man should recognize as involving an unreasonable risk of causing an invasion of an interest of another." [30] Nonfeasance is "a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do." [31] To decide whether a claim should be analyzed as misfeasance or nonfeasance, the Court must focus on the "the negligent character of the actor's conduct" by determining whether the defendant is one "who does an affirmative act" or "one who merely omits to act." [32] The treatise, *Prosser & Keeton on the Law of Torts,* explains, "by 'misfeasance' the defendant has created a new risk of harm to the plaintiff, while by 'nonfeasance' he has at least made his situation no worse, and has merely failed to benefit him by interfering in his affairs." [33]

A classic example of conduct properly analyzed as nonfeasance arises when a passerby sees someone drowning but does nothing to aid the victim. [34] Absent a special relationship, the law generally would not impose a duty on the passerby because he did not create a new risk of harm to the swimmer. [35] Instead, the swimmer fell "into peril through no conduct of the actor." [36] The passerby merely failed to act; he made the swimmer's situation no worse.

DuPont's conduct is properly analyzed as misfeasance because, unlike the passerby, DuPont performed an "affirmative act" that "created a new risk of harm." DuPont's affirmative act was the release of asbestos in the workplace. The majority appears to agree that DuPont's conduct, in relation to an employee exposed to asbestos at the work site, must be analyzed as misfeasance. One could not argue that the employee came into peril through no conduct of DuPont, or that DuPont "made [the employee's] situation no worse." [37] Rather, DuPont created the risk of harm by releasing asbestos.

The majority is emphatic that, "legal characterizations cannot change the nature of the underlying conduct." Thus, the majority would have to agree that, as to Mr. Price, DuPont's misfeasance is not transformed into nonfeasance by focusing, for example, on DuPont's failure to provide Mr. Price a breathing mask. Regardless of the remedial steps Dupont might have

---

28. *Ibid.*

29. *Riedel,* 968 A.2d at 25 (quoting *Danby v. Osteopathic Hosp. Ass'n of Del.,* 104 A.2d 903, 907–08 (Del.1954)).

30. Restatement (Second) of Torts § 284(a) (hereafter Restatement).

31. Restatement § 284(b).

32. Restatement § 302 cmt. a.

33. W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts,* § 56, at 373 (5th ed.1984) (hereafter, *Prosser* ).

34. Restatement § 314 cmts. c and e.

35. *Prosser,* § 56, at 373.

36. Restatement § 314 cmt. e.

37. *Prosser,* § 56, at 373.

taken, the fact remains that Dupont's release of asbestos into the workplace caused harm to Mr. Price.

The same analysis should apply to Mrs. Price's claim. DuPont's conduct has not changed. The company still "created" the risk of harm by releasing the asbestos. No one could contend that Mrs. Price came "into peril through no conduct of" DuPont. There is a difference, however, between Mr. Price's exposure at the workplace and Mrs. Price's exposure at home. Dupont's release of asbestos in the workplace harmed Mr. Price directly, without any act by another. Dupont harmed Mrs. Price only because Mr. Price unknowingly brought the asbestos home with him. But that difference has no bearing on whether Dupont acted or failed to act. Rather, it bears on the separate question of whether it was foreseeable that Dupont's conduct would harm Mrs. Price.[38]

Other jurisdictions that have addressed whether "take home" asbestos claims constitute misfeasance or nonfeasance have found them to constitute misfeasance. In *Rochon v. Saberhagen Holdings, Inc.*, the Washington Court of Appeals looked to the Restatement (Second) and held that conduct essentially identical to Dupont's had the character of "affirmative acts" and thus must be analyzed as misfeasance, not nonfeasance: "Here, it is Kimberly-Clark's own affirmative acts—operating its own factory in an unsafe manner—that allegedly caused Mrs. Rochon's illness, not either a failure to act or the act of a third."[39] The Tennessee Supreme Court reached the same conclusion in *Satterfield v. Breeding Insulation Co.*[40]

There is a split of authority in other jurisdictions, but those decisions do not address the misfeasance/nonfeasance issue. Rather, they discuss foreseeability and policy. For example, in *Olivo v. Owens–Ill., Inc.*, the New Jersey Supreme Court held that, "to the extent Exxon Mobil owed a duty to workers on its premises for the foreseeable risk of exposure to friable asbestos and asbestos dust, similarly, Exxon Mobil owed a duty to spouses handling the workers' unprotected work clothing based on the foreseeable risk of exposure from asbestos borne home on contaminated clothing."[41] Those courts that reject similar claims do so based on public policy considerations and/or distinguishable facts.[42] It does not appear that any court has rejected a "take home" asbestos claim by characterizing it as nonfeasance.

The majority focuses on DuPont's admitted omissions—its failure to warn, and, generally, its failure to prevent Mr. Price from taking home asbestos—in concluding that DuPont's conduct is "pure nonfea-

**38.** Restatement § 284(a); *Sirmans v. Penn*, 588 A.2d 1103, 1107 (Del.1991).

**39.** 140 Wash.App. 1008, 2007 WL 2325214, at *3 (Wash.Ct.App. Aug. 13, 2007).

**40.** 266 S.W.3d 347, 354–360 (Tenn.2008).

**41.** 186 N.J. 394, 895 A.2d 1143, 1149 (2006). See also, *Condon v. Union Oil Co. of Cal.*, 2004 WL 1932847, at *5 (Cal.Ct.App. Aug. 31, 2004) ("[I]t was foreseeable that family members who were exposed to this clothing would also be in danger of being exposed."); *Chaisson v. Avondale Indus., Inc.*, 947 So.2d 171, 183–84 (La.Ct.App.2006) (considering various factors including that defendant's acts created a foreseeable risk to the plaintiff).

**42.** *In re New York City Asbestos Litig.*, 5 N.Y.3d 486, 806 N.Y.S.2d 146, 840 N.E.2d 115, 119–22 (2005) (finding no duty based on policy considerations, including the potential for limitless liability); *In re Certified Question from Fourteenth Dist. Court of Appeals of Texas*, 479 Mich. 498, 740 N.W.2d 206, 211–22 (2007) (finding no duty because the social costs would exceed the social benefit); *CSX Transp., Inc. v. Williams*, 278 Ga. 888, 608 S.E.2d 208, 209–10 (2005) (finding no duty based on policy considerations).

sance and nothing more." But, the fact that Dupont's conduct included omissions does not necessarily equate to nonfeasance. The Restatement warns against such analysis by explaining that the Court should focus on the character of Dupont's conduct.[43] That is, the Court must determine whether DuPont is one "who does an affirmative act" or "one who *merely* omits to act"[44] and, similarly, whether Dupont's conduct created the peril.[45] As explained above, regardless of anything Dupont may have failed to do, we know, for present purposes, that it released asbestos into the workplace and that the asbestos caused harm to Mrs. Price. Dupont created the peril as to both Mr. and Mrs. Price. Neither would be suffering asbestos-related disease if not for Dupont's wrongful act.

In sum, this is not a matter of semantics. It is about applying the proper test to determine whether the conduct is misfeasance or nonfeasance, regardless of how the conduct is characterized. The analytical framework provided in the Restatement requires a finding of misfeasance.[46]

### To Prevail on a Misfeasance Claim the Harm must be Foreseeable

Misfeasance is "an act which the actor as a reasonable man should recognize as involving an unreasonable risk of causing an invasion of an interest of another."[47] One "who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act."[48] Thus, even when a defendant is one "who does an affirmative act" instead of "one who merely omits to act," a duty is not imposed on the defendant unless, in summary, the defendant should have reasonably recognized that his affirmative act would harm another.

Consistent with the Restatement, Delaware tort law uses foreseeability to determine whether one person owes a duty to another.[49] Thus, whether the law will impose a duty on DuPont will turn on whether the harm to Mrs. Price was foreseeable—whether DuPont should have recognized that its release of asbestos created an "unreasonable risk of [invading]" Mrs. Price's interests.[50] Mrs. Price's proposed amended complaint alleges that: (1) Mr. Price worked at DuPont; (2) DuPont knew or should have known asbestos was dangerous to human health; (3) DuPont knew or should have known asbestos had a tendency to release fibers that would be transported to its employees' homes; (4) DuPont exposed Mr. Price to asbestos despite that knowledge; and (5) it thereby knowingly and wrongfully exposed Mrs. Price to asbestos, which made her ill. Assuming those allegations to be true, the injury to Mrs. Price was foreseeable.

Based on the foregoing, the trial court's decision should be reversed.

43. Restatement §§ 302 cmt. a, 314 cmt. e, 284.

44. Restatement § 302 cmt. a. (emphasis added).

45. *Ibid.*

46. Restatement §§ 302 cmt. a, 314 cmt. e, 284.

47. Restatement § 284(a).

48. Restatement § 302 cmt. a.

49. *See, e.g., Sirmans,* 588 A.2d at 1107; *Delmarva Power & Light Co. v. Burrows,* 435 A.2d 716, 719 (Del.1981).

50. Restatement § 284(a).