# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ERIC MONZO AND
DANA SPRING MONZO,

               Plaintiffs,

               v.

NATIONWIDE PROPERTY &
CASUALTY INSURANCE CO.,

               Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

C.A. No. K18C-11-003 NEP

Submitted: October 27, 2021
Decided: January 27, 2022

## MEMORANDUM OPINION AND ORDER

*Upon Defendant's Motion to Satisfy Judgment*
**DENIED AS MOOT**

*Upon Plaintiffs' Motion to Amend Complaint*
**DENIED**

Eric J. Monzo, Esquire, Morris James LLP, Wilmington, Delaware, *On Behalf of Pro Se Plaintiffs.*

Louis J. Rizzo, Jr., Esquire, Reger Rizzo & Darnall LLP, Wilmington, Delaware, *Attorney for Defendant.*

**Primos, J.**

This matter involves a claim for damages by Plaintiffs Eric Monzo and Dana Spring Monzo (hereinafter collectively "Plaintiffs")[1] against their homeowners' insurance carrier, Defendant Nationwide Property & Casualty Insurance Company (hereinafter "Defendant"). Before the Court are two separate motions—Plaintiffs' Motion to Amend Complaint and Defendant's Motion to Satisfy Judgment. At the outset, the Court notes that Defendant's Motion to Satisfy Judgment must be **DENIED AS MOOT**. In accordance with Superior Court Civil Rule 68,[2] judgment was entered on the matter when Plaintiffs accepted an offer of judgment filed with this Court, which was subsequently satisfied.[3] This procedure is non-discretionary and, in most respects, self-executing.[4] As explained *infra*, the remaining motion, Plaintiff's Motion to Amend Complaint, is also **DENIED**, resulting in a final resolution of this case.

---

[1] Plaintiffs, who are both licensed Delaware attorneys, are self-represented in this action.

[2] Super. Ct. Civ. R. 68 ("If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the Clerk **shall** enter judgment." (emphasis supplied)).

[3] In this case, as will be mentioned *infra*, Plaintiffs submitted an "Acceptance of Offer of Judgment" and "Certificate of Service" on June 22, 2021. D.I. 56. Thereafter, judgment was entered, and Plaintiffs subsequently filed a "Satisfaction of Judgment" on July 26, 2021. D.I. 58.

[4] *See Mallory v. Eyrich*, 922 F.2d 1273, 1279 (6th Cir. 1991) ("Rule 68 . . . leaves no discretion in the district court to do anything but enter judgment once an offer has been accepted. By directing that the clerk shall enter judgment after proof of offer and acceptance have been filed, the explicit language of the rule signifies that the district court possesses no discretion to alter or modify the parties' agreement."). The Court notes that it looks to the federal judiciary with near "identical rules[,]" *infra*, for "persuasive" authority in interpreting Delaware's Rule 68 counterpart. *Smith v. State*, 647 A.2d 1083, 1088 (Del. 1994) ("[C]onstruction of identical rules by the federal judiciary is accorded "great persuasive weight" in our interpretation of the Delaware counterparts." (citing *Hoffman v. Cohen*, 538 A.2d 1096, 1098 (Del. 1988) ("This Court has also held that because the 1948 Superior Court Civil Rules are basically the 1938 Federal Rules of Civil Procedure, the construction of these latter rules by the federal judiciary is of "great persuasive weight in the construction of the present Superior Court Rules." (citations omitted)))).

## I. FACTS AND PROCEDURAL HISTORY

The background facts of this action are set forth in *Monzo v. Nationwide Prop. & Cas. Ins. Co.*[5] (hereinafter "*Monzo II*"). The relevant facts pertaining to the motions now before the Court are as follows:

On November 1, 2018, Plaintiffs filed a Complaint against Defendant relating to Plaintiffs' homeowners' policy. Count I of the Complaint sought a declaratory judgment that Defendant was required to cover certain losses pursuant to Plaintiffs' policy. Count II of the Complaint stated a claim for bad faith breach of contract, which was dismissed pursuant to stipulation between the parties, as approved by the Court, on August 1, 2019, "in order to facilitate settlement discussions."[6]

Subsequently, Defendant filed a motion for summary judgment on the remaining claims, which this Court granted in full on March 18, 2020.[7] On March 11, 2021, the Delaware Supreme Court affirmed this Court's decision in part, but reversed as to the Option R coverage provision in Plaintiffs' policy. The Supreme Court found, *inter alia*, that "[t]here are material disputed facts regarding whether the sole cause of the damage was a water backup to which the policy's Option R Coverage applies."[8]

Plaintiffs filed a motion to amend the Complaint (hereinafter the "Motion to Amend") on May 21, 2021, seeking to add back the bad faith claim, with new allegations stemming from limited discovery. These included the assertion that Plaintiffs' insurance agent, Mr. Papa, had opined that he "believed that coverage may be afforded to Plaintiffs to [sic] the loss suffered."[9] The Motion to Amend was

---

[5] 249 A.3d 106, 111-17 (Del. 2021).
[6] Pls.' Mt. to Amend Compl. ¶ 3 (D.I. 50).
[7] *Monzo v. Nationwide Prop. & Cas. Ins. Co.* (hereinafter "*Monzo I*"), 2020 WL 1317276, at *7 (Del. Super. Mar. 18, 2020), *aff'd in part, rev'd in part*, 249 A.3d 106 (Del. 2021).
[8] *Monzo II*, 249 A.3d at 130.
[9] Proposed Am. Compl. ¶ 59.

originally noticed for June 10, 2021. The Court subsequently issued an order rescheduling the hearing for June 17, 2021.[10] Prior to June 17, the parties initiated settlement discussions in an attempt to resolve the matter.

On June 13 and 14, 2021, Plaintiff Eric Monzo sent emails to defense counsel that stated in relevant part:

> Before we go to argument on whether the [bad faith] breach of contract claim comes back in, I wanted to inquire whether settlement discussions would be fruitful. . . . As I mentioned, given the insurer's prior position that a bad faith breach of contract claim **could stifle settlement efforts** and because the hearing on whether that claim is added back is on Thursday, I thought it would be productive to discuss settlement this week . . . To get the ball rolling and based on the current posture in the case, I'd be inclined to settle for payment of the $25k in option r [sic] coverage in exchange for a complete release. Please discuss this offer to [sic] your client and advise.[11]

On June 15, defense counsel responded that he had conveyed the offer to his client and "I suggested that they put their best foot forward to try to resolve this now. They instructed me to extend an offer in the amount of $8,000."[12] The email went on to state that settlement would be in the form of an offer of judgment and "is the extent of the authority of settlement that will be extended. Please let me know if we are settled at this figure . . . ."[13] The offer of judgment (hereinafter the "Offer"), which was attached to defense counsel's email, stated as follows:

> Pursuant to Superior Court Civil Rule 68, Defendant offers **to allow judgment to be entered against it in the above-captioned matter** in the amount of Eight Thousand Dollars ($8,000.00), inclusive of fees and costs.

---

[10] D.I. 51.
[11] Ex. C to Pls.' Resp. to Mt. to Satisfy J. and Suppl. Resp. to Mt. to Amend Compl. (hereinafter "Pls.' Ex. _"), at 7, 5 (emphasis supplied) (D.I. 63).
[12] *Id.* at 4.
[13] *Id.*

This offer of judgment is made solely for the purposes specified in Rule 68 and is not to be construed as an admission that the Defendant is liable in this action or that the Plaintiffs have suffered damage.[14]

Mr. Monzo responded on June 16, "We will accept the offer of judgment and instruct the Clerk to enter judgment against Nationwide in the amount of $8000. We will instruct Chambers to continue the hearing scheduled for tomorrow until the next motion calendar. Thank you."[15]

Subsequently, Plaintiffs filed an acceptance of the Offer with the Court, with Plaintiffs' direction to enter judgment, on June 22, 2021.[16] The Offer was entered by the Clerk, and the amount was paid by Defendant and accepted by Plaintiffs, as indicated in Plaintiffs' "Satisfaction of Judgment on Count I of the Complaint" filed with the Court on July 26, 2021.[17]

However, a dispute arose between the parties regarding whether or not the Offer comprehended the bad faith claim that was the subject of the Motion to Amend. To summarize Plaintiffs' position on this, Eric Monzo stated in an email on July 21, 2021, "The check was cashed in connection with payment on a homeowners' claim. You and your client elected to file an offer of judgment rather than settle in exchange for a full release. All other claims remain."[18]

## II. PARTIES' CONTENTIONS

Defendant makes three arguments: 1) the Offer includes, in its disposition, the potential bad faith claim by its reference of "allow[ing] judgment to be entered against it in the above-captioned matter"[19]; 2) even if the Offer did not include the

---

[14] Pls.' Ex. A (emphasis supplied).
[15] Pls.' Ex. C at 4.
[16] D.I. 56.
[17] D.I. 58.
[18] Pls.' Ex. C at 1.
[19] Pls.' Ex. A.

bad faith claim, the final judgment as to the Option R claim is *res judicata* on the potential bad faith claim; and 3) the motion to amend is futile because the bad faith claim cannot survive a Rule 12(b)(6) motion to dismiss.

Plaintiffs respond that the Offer was not clear as to what it included, and that any ambiguity must be construed against the drafter. In addition, Plaintiffs argue that their amendment will not prejudice the Defendant and should be granted freely. It is important to note that neither party is attempting to rescind the Offer under general contract principles, *e.g.*, mutual mistake of fact.

## III. DISCUSSION

**A. The Court need not make a determination on the interpretation of "above-captioned matter" within the Offer.**

The purpose of Superior Court Civil Rule 68 (hereinafter "Rule 68") is to encourage settlement and avoid litigation.[20] Rule 68 prompts both parties to balance and evaluate the risks and costs of litigation against the likelihood of success at trial on the merits.[21] Generally, the principles of contract law are applied when a question of interpretation is raised.[22]

Among Delaware courts, there are two perspectives on how to interpret the language contained within Rule 68 when there appears to be a conflict in the parties'

---

[20] *Cahall v. Thomas*, 906 A.2d 24, 25–26 (Del. 2006) (citing *Beaudet v. Thomas*, 797 A.2d 678 (Del. 2002)).

[21] *Id.*; *Marek v. Chesny*, 473 U.S. 1, 5 (1985).

[22] *Webb v. James*, 147 F.3d 617, 620 (7th Cir. 1998); *see also, e.g.*, *Radecki v. Amoco Oil Co.*, 858 F.2d 397, 399 (8th Cir. 1988) (applying "contract principles . . . to a Rule 68 offer of judgment"); *Mallory*, 922 F.2d at 1279 ("In cases construing Rule 68 judgments where the parties disagree as to what was intended, the courts apply contract principles."); *Erdman v. Cochise Cty., Ariz.*, 926 F.2d 877, 880 (9th Cir. 1991) ("Typically, a [Rule 68] settlement agreement is analyzed in the same manner as any contract, i.e., any ambiguities are construed against the drafter. Where necessary, district courts are authorized to look to extrinsic evidence to clarify ambiguities as to the intended meaning of material terms."); *Basha v. Mitsubishi Motor Credit of Am., Inc.*, 336 F.3d 451, 453 (5th Cir. 2003) ("Courts apply general contract principles to interpret Rule 68 offers of judgment.").

6

understanding of a term. The first case interpreting a Rule 68 offer appears to be *Sarkis v. Harsco Corp.*[23] In *Sarkis*, along with subsequent decisions, this Court has looked to extrinsic evidence when trying to interpret language and intentions in an offer of judgment.[24] However, more recently in *Hamilton v. Nationwide Mut. Fire Ins. Co.*,[25] when determining whether cost and fees must be explicitly stated in a Rule 68 offer, this Court favorably cited a Third Circuit decision which stated:

> Here, the Offer was valid and was silent as to fees and costs. That fact begins and ends our analysis. In interpreting a Rule 68 offer of judgment, courts must not consider extrinsic evidence or the intentions of the parties.[26]

Although this might appear to reflect a conflict among Delaware courts on this issue, any potential conflict is resolved because longstanding Delaware case law confirms that general principles of contract law apply to offers of judgment where the issue of attorney fees and costs is not present.[27] Outside this narrow exception,

---

[23] 332 A.2d 156 (Del. Super. 1975). *See id.* at 158 ("The general rule is that the scope of an estoppel created by a [Rule 68 or] consent judgment is governed by the intention of the parties as gathered from all the circumstances and, in particular, from the terms of the agreement upon which the judgment is based." (citing 47 Am.Jur.2d, Judgments § 1092, p. 149)).

[24] *See, e.g., Gerken v. Atkinson*, 2002 WL 1832322, at *1 (Del. Super. Aug. 8, 2002) ("General principles of contract law are applicable in interpreting offers of judgment and their acceptance." (citing 13 James Wm. Moore et al., Moore's Federal Practice § 68.04 (3d. ed. 2002))). *Cf. Guardian Cap. Corp. v. Distant Horizon Dream, Inc.*, 1993 WL 258926, at *2 (Del. Super. July 2, 1993) ("[T]he Court looks to the language and the circumstances of [a] consent judgment to determine its effect."); *Maddox v. Just. of Peace Ct. No. 1*, 1990 WL 123437, at *3 (Del. Super. Aug. 10, 1990) ("The pleadings should be considered in determining the effect of a consent judgment.").

[25] 2018 WL 6042813 (Del. Super. Nov. 16, 2018).

[26] *Id.* at *3 (quoting *Lima v. Newark Police Dep't*, 658 F.3d 324, 333 (3d Cir. 2011)).

[27] *See supra* notes 23 and 24. *Cf. Erdman*, 926 F.2d at 880 (stating that generally Rule 68 offers are analyzed in "the same manner as any contract," but that Rule 68 offers "differ from contracts with respect to attorney fees"—*i.e.*, a waiver or limitation of attorney fees in a Rule 68 offer must be "clear and unambiguous").

this Court applies general contract principles, which permit extrinsic evidence to be considered "to arrive at a proper interpretation of contractual terms."[28]

In this case, Plaintiffs argue that the language of the Offer is ambiguous because it is unclear whether it includes within its scope the bad faith claims that were the subject of the pending Motion to Amend. Thus, while, as noted *supra*, Defendant's Motion to Satisfy Judgment is moot because the judgment has already been satisfied pursuant to Plaintiffs' acceptance of the Offer, there is a dispute between the parties about what that Offer covered—*i.e.*, whether it applied only to Count I of the original complaint, which included, after the Supreme Court's decision, only the Option R coverage, or whether it also applied to Plaintiffs' bad faith claims.

At the outset, the Court finds the language of the Offer—specifically, its statement, "Defendant offers to allow judgment to be entered against it in the above-captioned matter"—to be ambiguous, given the unique circumstances of this case. At the time the Offer was made, Plaintiffs had filed the Motion to Amend in "the above-captioned matter," but the Court had not yet ruled on that motion, and thus the bad faith claims had not been added back into the case.

Accordingly, to properly interpret the language in question, the Court would need to examine extrinsic evidence. While some of that evidence has been presented to the Court in the form of the emails that the parties have made exhibits to their submissions, other evidence has not been placed before the Court, including a

---

[28] *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997); *see also Hercules, Inc. v. AIU Ins. Co.*, 784 A.2d 481, 489–90 (Del. 2001) ("Our goal is to ascertain the intent of the contracting parties based on the contract terms. Ambiguity exists when the contractual provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." (internal quotations and citations omitted)).

telephone conversation between Mr. Monzo and defense counsel that is referenced in those emails.[29]

However, the Court need not schedule an evidentiary hearing to provide more detail concerning the circumstances surrounding the settlement discussions given that, as the Court finds *infra,* the Motion to Amend is futile.[30]  To put it differently, the Court's decision on the Motion to Amend resolves the case, since the claims that Plaintiffs contend were not included in the Offer's scope—the bad faith claims—cannot be brought back into the case, and thus the judgment that has been entered includes all of Plaintiff's claims in this case.[31]

**B. The Court finds that the bad faith claim is futile because it is subject to dismissal under Superior Court Civil Rule 12(b)(6) for failure to state a claim.**

Despite the fact that  Rule 15 provides that leave to amend a complaint should be "freely given,"[32] leave to amend should be denied when the proposed amendment would be futile.[33]  "A motion for leave to amend a complaint is futile where the amended complaint would be subject to dismissal under Rule 12(b)(6) for failure to state a claim."[34]  On a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6), the moving party bears the burden of demonstrating that "under no set of facts which could be proven in support of [the complaint] would the [plaintiff] be

---

[29] Pls.' Ex. C at 5, 6.

[30] For the same reason, the Court need not analyze the merits of Defendant's argument regarding the potential *res judicata* effect of the accepted Offer on Plaintiffs' pending bad faith claims.

[31] Mr. Monzo asserted at oral argument that Plaintiffs' bad faith claims were not extinguished by acceptance of the Offer because they were pending at the time of the Offer, *i.e.*, they were the subject of the Motion to Amend, which had not been decided by the Court, but he conceded that other potential claims would not be similarly preserved.

[32] Super. Ct. Civ. R. 15(a).

[33] *Clark v. State Farm Mut. Auto. Ins. Co.*, 131 A.3d 806, 811 (Del. 2016)  (citing *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011)).

[34]  *Id.* (quoting *Price*, 26 A.3d at 166).

entitled to relief."[35]  Upon this Court's review of a motion to dismiss, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[36]

Generally, a bad faith claim has been recognized in Delaware "when the insurer refuses to honor its obligations under the policy and clearly lacks reasonable justification for doing so."[37]  Bad faith claims "can stem from an insurer's failure to investigate, pay, process a claim, or in delaying payment."[38]  However, "a mere delay in investigating a claim or paying benefits does not alone establish an insurer's bad faith if there was a reasonable justification for the insurer's failure to do so."[39]  When judging reasonableness in this context, "[t]he ultimate question is whether at the time the insurer denied liability, there existed a set of facts or circumstances known to the insurer which created a bona fide dispute and therefore a meritorious defense to the insurer's liability."[40]  However, "[d]elays attributed to a 'get tough' policy, *i.e.,* a general business practice of claims denial without a reasonable basis, may subject the insurer to a bad faith claim."[41]

---

[35] *Daisy Constr. Co. v. W.B. Venables & Sons, Inc.*, 2000 WL 145818, at *1 (Del. Super. Jan. 14, 2000).

[36] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (internal citations and quotations omitted); a*ccord Daisy Constr.*, 2000 WL 145818, at *1; *Doe v. Cahill,* 884 A.2d 451, 458 (Del. 2005).

[37] *Enrique v. State Farm Mut. Auto. Ins. Co.*, 142 A.3d 506, 511 (Del. 2016).

[38] *Price v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 1213292, at *11 (Del. Super.  Mar. 15, 2013), *aff'd*, 77 A.3d 272 (Del. 2013) (TABLE).

[39] *Powell v. AmGuard Ins. Co.*, 2019 WL 4509165, at *3 (Del. Super. Sept. 19, 2019) (citing *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 266 (Del. 1995)).

[40] *RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 910 (Del. 2021) (citing *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 369 (Del. Super. 1982)).

[41] *Tackett*, 653 A.2d at 266.

Preliminarily, Plaintiffs have not alleged in their proposed amended complaint that Defendant has a "general business practice" of claims denial; therefore, there is no need for analysis under that grouping of claims. Rather, Plaintiffs have alleged that Defendant's action constituted bad faith in that Defendant "fail[ed] to make complete and timely payment of insurance proceeds . . . without reasonable justification"[42] and "failed to . . . investigate and process"[43] the claim.

### 1. Defendant had reasonable justification for its failure to make payment.

While, as noted *supra*, Plaintiffs and Defendant dispute whether the Offer included the potential bad faith claim, all parties agree that the Offer included the Option R coverage under Count I. Although the Offer was not for the full policy limits under Option R, the Court does not find that Defendant failed to pay completely, or delayed payment, without reasonable justification.

Defendant had a reasonable belief that the policy, including the Option R coverage, did not cover the damages. This Court, although reversed in part, found that belief to be justified.[44] The Supreme Court of Delaware stated, upon appeal, that, while Plaintiffs were not entitled to coverage for damage to the pedestrian bridge because "the earth movement exclusion unambiguously applies to the collapsed pedestrian bridge," a genuine issue of material fact still existed that might or might not allow coverage under Option R for the collapsed retaining wall.[45] However, the Supreme Court neither made, nor pointed to facts in the record that

---

[42] Proposed Am. Compl. ¶ 48.

[43] Proposed Am. Compl. ¶ 51; *see generally* Proposed Am. Compl. 48–63 (constituting the entirety of Plaintiffs' bad faith allegations).

[44] *Monzo I*, 2020 WL 1317276, at *4.

[45] *Monzo II*, 249 A.3d at 130. The Supreme Court's holdings in *Monzo II* are clearly the "law of the case." *See Marine v. State*, 624 A.2d 1181, 1184 n.5 (Del. 1993) ("Previous holdings of an appellate court constitute the law of the case and are conclusive as to litigated issues decided on remand and subsequent appeal." (citing *Kenton v. Kenton*, 571 A.2d 778, 784 (Del. 1990))).

supported, a conclusive finding against Nationwide as a matter of law with regard to the Option R coverage. Thus, Nationwide rightfully had a "meritorious defense" not only with regard to damage to the pedestrian bridge—concerning which the Supreme Court upheld summary judgment—but also with regard to the retaining wall based on the evidence that the Option R coverage did not cover Plaintiffs' damages, which represented a "bona fide dispute" as confirmed by the Supreme Court's holding.

### 2. Defendant did not fail to investigate or process the claim, even when considering Plaintiffs' new allegations.

In this matter, the Court finds that there was a speedy investigation of Plaintiffs' claims, evidenced by the fact that both parties hired experts shortly after the incident to discover and analyze the root cause of the damage. Specifically, Defendant hired structural engineer Sihan S. Jawad to investigate and determine the cause of the damage to the bridge and the retaining wall. Jawad's investigation found, *inter alia*, that "the damage to the bridges and the retaining walls . . . was caused by soil erosion and soil/hydrostatic pressure."[46] The conclusions of Jawad's investigation, along with other inquiry, have left an open question concerning whether the Option R coverage applied to the damage to the retaining wall under the claim creating the original dispute. Thus, the claim was both investigated and processed in a timely manner by Defendant.

As mentioned *supra*, Plaintiffs have asserted factual allegations relating to representations to them by their insurance agent, Mr. Papa. This Court holds that the allegations that "Mr. Papa believed that coverage may be afforded to Plaintiffs to [sic] the loss suffered … [and] the Defendant failed [to] properly investigate Mr. Papa's assertion that insurance coverage could be available yet improperly denied

---

[46] *Id.* at 113 (quoting Engineering Report of Sinan S. Jawad, P.E., at 3).

the Claim"[47] fail to support a colorable bad faith claim. The amended complaint's allegations pertaining to Mr. Papa's representations that the incident could be covered amount to nothing but statements of first impression from an agent who was neither responsible for interpretation of the contractual provisions of the policy nor familiar with the nuanced circumstances surrounding the damages to Plaintiffs' property. More to the point, Mr. Papa represented to Plaintiffs that coverage "may be afforded"—not that it would be.

Hence, as a matter of law, Defendant cannot be said to have failed to investigate or process the claim, even with Plaintiffs' additional factual allegations viewed in a light most favorable to Plaintiffs.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Satisfy Judgment is **DENIED AS MOOT**, and Plaintiffs' Motion to Amend the Complaint is **DENIED** as futile.

**IT IS SO ORDERED.**

_____
Judge

NEP/wjs
*Via File & ServeXpress*
oc:    Prothonotary
        Counsel of Record
        file

---

[47] Proposed Am. Compl. ¶¶ 59–61.