# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| UTILIPATH, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 9922-VCP |
| BAXTER MCLINDON HAYES, JR., | ) | |
| BAXTER MCLINDON HAYES, III, | ) | |
| JARROD TYSON HAYES, AND | ) | |
| UTILIPATH HOLDINGS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: January 20, 2015
Date Decided: April 15, 2015

Edmond D. Johnson, Esq., James G. McMillan, Esq., James H.S. Levine, Esq., PEPPER HAMILTON LLP, Wilmington, Delaware; Matthew V. DelDuca, Esq., Angelo A. Stio, III, Esq., PEPPER HAMILTON LLP, Princeton, New Jersey; *Attorneys for Plaintiff.*

Timothy M. Holly, Esq., Ryan P. Newell, Esq., CONNOLLY GALLAGHER LLP, Wilmington, Delaware; Oliver D. Griffin, Esq., Peter N. Kessler, Esq., Julie B. Negovan, Esq., KUTAK ROCK LLP, Philadelphia, Pennsylvania; Edward T. Kang, Esq., Gregory H. Mathews, Esq., KANG HAGGERTY & FETBROYT LLC, Philadelphia, Pennsylvania; *Attorneys for Defendants.*

**PARSONS, Vice Chancellor.**

The plaintiff in this action is a Delaware limited liability company ("LLC") that purchased certain of its own membership units from the defendants, pursuant to a "redemption agreement." The redemption agreement provided that the purchase price could be adjusted after the transaction closed depending on the calculation of the plaintiff LLC's net working capital. The redemption agreement correctly anticipated that the parties might dispute that calculation, and provided for an alternative dispute resolution process to adjudicate such a disagreement. The plaintiff's complaint seeks to compel the defendants to comply with that alternative dispute resolution process.

The defendants have moved to dismiss the complaint, contending that this action should be dismissed or stayed in favor of a case pending in federal court in Pennsylvania that involves similar parties and the same overall set of transactions. The defendants also contend that the filing of this action was in violation of Court of Chancery Rule 15(aaa). Lastly, they argue that the complaint should be dismissed because it seeks enforcement of an unenforceable "agreement to agree." For the following reasons, I reject each of those contentions, and deny the motion to dismiss.

## I.    BACKGROUND[1]

### A.    Facts and Procedural History

Plaintiff is Utilipath, LLC ("Utilipath" or "Plaintiff"), a Delaware LLC. Defendants in this action are: (1) Utilipath Holdings, Inc. ("Holdings"), a North Carolina corporation; (2) Baxter McLindon Hayes, Jr.; (3) Baxter McLindon Hayes, III; and (4)

---

[1]    Unless otherwise noted, all facts are drawn from the well-pled allegations in Plaintiff's Verified Complaint (the "Complaint").

1

Jarrod Tyson Hayes (the latter three being the "Hayes Defendants," and together with Holdings, "Defendants").

This case concerns a transaction between Utilipath and Defendants that closed on August 19, 2013. Until that date, the Hayes Defendants were the sole members of a North Carolina LLC named Utilipath, LLC ("Old Utilipath"). Defendants transferred all of their membership interests in Old Utilipath to Defendant Holdings. Old Utilipath then merged with Utilipath, making the latter a wholly owned subsidiary of Holdings.

Through the agreement relevant to this action, the "Redemption Agreement,"[2] Defendants caused Holdings to sell all of its Class A membership units to Utilipath. Defendants, through Holdings, apparently continued to hold all of Utilipath's Class B membership units. Utilipath paid $15,750,000 for the Class A units. As relevant to this case, however, that purchase price could be adjusted post-closing according to the Redemption Agreement if Utilipath's actual net working capital as of the closing date turned out to be below $6 million.

In November 2013, Utilipath provided Defendants with its calculation of the Closing Net Working Capital amount[3] for purposes of this price adjustment mechanism. Thereafter, Defendants served a Dispute Notice pursuant to Section 1.3.1 of the Redemption Agreement, in which it objected to Utilipath's calculations. Notwithstanding

---

[2]     Compl. Ex. A [hereinafter "Redemption Agreement"].

[3]     Capitalized terms not otherwise defined herein are used as defined in the Redemption Agreement.

2

several months of back-and-forth attempting to resolve their dispute over the net working capital adjustment, the parties failed to agree on this issue.

Section 1.3.4 of the Redemption Agreement provides for an alternative dispute resolution process whereby, if the parties could not agree about whether a net working capital adjustment payment was due, or the proper amount of such a payment, an Independent Accounting Firm would be chosen to settle the issue. On April 18, 2014, Utilipath invoked Section 1.3.4 and demanded that the parties submit their dispute to such an independent accounting firm. Defendants refused to comply. Utilipath, by this action, seeks to compel enforcement of the alternative dispute resolution ("ADR") provision of the Redemption Agreement as it relates to the adjustment of Net Working Capital.[4]

This action is not the first litigation involving these parties and concerning the August 2013 transaction of which the Redemption Agreement was a part. On December 31, 2013, Utilipath filed suit in this Court against the same parties that are Defendants in this action. That first Delaware complaint, however, was dismissed voluntarily on June 23, 2014.[5]

On March 21, 2014, an action was filed in the United States District Court for the Eastern District of Pennsylvania that involves similar parties (the "Pennsylvania

---

[4] Compl. ¶ 5.

[5] Notice of Dismissal Without Prejudice, *Utilipath, LLC v. Hayes*, C.A. No. 9214-VCN (Del. Ch. June 23, 2014).

3

Action").[6] In the Pennsylvania Action, which still is pending, the plaintiff is NewSpring Mezzanine Capital, LP ("NewSpring"), a Delaware limited partnership that appears to be an investor in and member of Utilipath. The defendants in the Pennsylvania Action consist of all of the Defendants in this case, plus Utilipath. The Pennsylvania Action arises from the same overall transaction as this case, but, in addition to the Redemption Agreement, it also involves a "Loan Agreement" and a "Stock Purchase Agreement."

In the Pennsylvania Action, NewSpring asserts various causes of action based on allegations of fraud and alleged breaches of the transaction agreements. In particular, it alleges that the Individual Defendants misrepresented Utilipath's compliance with its tax obligations, its profit projections, and its financial and accounting practices. New Spring's complaint in the Pennsylvania Action contains some eighteen Counts, including claims for: violations of the United States and Pennsylvania securities laws; unjust enrichment; fraudulent transfer; common law fraud; negligent misrepresentation; indemnification under all three of the agreements; breach of contract and rescission under the Loan Agreement; and breach of contract and rescission under the Stock Purchase Agreement.[7] Utilipath brought cross-claims in the Pennsylvania Action against all of the Hayes Defendants and Holdings for fraud, negligent misrepresentation, and breaches of

---

[6] *NewSpring Mezzanine Capital II, L.P. v. Hayes*, C.A. No. 14-1706 (E.D. Pa. Mar. 12, 2014) [hereinafter "*NewSpring Litigation*"].

[7] Complaint, *NewSpring Litig.*, 2014 WL 1102437 (E.D. Pa. Mar. 21, 2014).

contract arising out of the Redemption Agreement, among other claims.[8]  Holdings and Baxter Hayes, Jr. filed counterclaims against NewSpring, as well as cross-claims against Utilipath for fraud, securities violations, and breach of contract.[9]

As relevant here, Utilipath moved to dismiss the cross-claims filed by Baxter Hayes Jr. and Holdings in the Pennsylvania Action.  In so doing, Utilipath contended in part that one of those cross-claims that asserts a breach of contract claim related to the Net Working Capital dispute should be dismissed or stayed in favor of arbitration pursuant to the Redemption Agreement.  On November 12, 2014, the Honorable Gerald A. McHugh denied Utilipath's motion.[10]  The Court's Memorandum Opinion of the same date articulated its reasons for denying the motion as it pertained to the Redemption Agreement.  Judge McHugh ruled that a dismissal or stay in favor of arbitration was not warranted on the record before him, but also refrained from deciding, at that time, "the broader question of precisely what aspects of this dispute, if any, should be submitted to arbitration."[11]

---

[8]     Amended Cross-claims of Utilipath, LLC, *NewSpring Litig.*, 2014 WL 4826110 (E.D. Pa. Aug. 22, 2014).

[9]     Amended Counterclaim and Cross-claim of Baxter McLindon Hayes, Jr. and Utilipath Holdings, Inc., *NewSpring Litig.*, 2014 WL 4385320 (E.D. Pa. Aug. 11, 2014).

[10]    *NewSpring Litig.*, 2014 WL 5843598, at *1 (E.D. Pa. Nov. 12, 2014).

[11]    *Id.* at *2.

### B.       Parties' Contentions

As noted above, Utilipath brought suit in this Court to compel Defendants' compliance with the ADR provision in the Redemption Agreement as it relates to the dispute over the Closing Net Working Capital.  By the pending motion, Defendants seek dismissal of Utilipath's Complaint on three separate grounds: (1) that the *McWane* first-filed doctrine applies and militates in favor of a stay or dismissal; (2) that Utilipath's Complaint was filed in violation of Court of Chancery Rule 15(aaa); and (3) that the ADR provision in Section 1.3.4 is an unenforceable "agreement to agree."  For the following reasons, I conclude that all of those arguments are unavailing and deny the motion to dismiss.

## II.       ANALYSIS

### A.       Legal Standard

This Court should deny a motion to dismiss under Rule 12(b)(6) "unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible to proof."[12]  In determining whether the Complaint meets this pleading standard, this Court will draw all reasonable inferences in favor of Plaintiffs, "accept all well-pleaded factual allegations in the Complaint as true," and "accept even vague allegations in the Complaint as 'well-pleaded' if they provide the defendant notice of the

---

[12]     *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

claim."[13]  The Court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[14]

## B.    The *McWane* Issue

Defendants first contend that because the Redemption Agreement currently is being litigated in a first-filed action in the Eastern District of Pennsylvania, under the *McWane* doctrine, this Action should be dismissed or stayed in favor of the Pennsylvania Action.[15]

### 1.    Applicable legal principles

In assessing which of multiple actions challenging the same conduct should proceed, this Court often applies the *McWane* doctrine.[16]  That doctrine reflects the general rule that "'litigation should be confined to the forum in which it is first commenced, and a defendant should not be permitted to defeat the plaintiff's choice of forum in a pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing.'"[17]  Thus, "[u]nder the [*McWane*] first-filed rule, this Court freely exercises its broad discretion to grant a stay 'when there is a prior

---

[13]     *Id.*

[14]     *Price v. E.I. duPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011).

[15]     I note that Defendants' motion requests only dismissal of the Complaint, but at various points in their briefing Defendants stated that they seek dismissal or a stay.

[16]     *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.,* 263 A.2d 281 (Del. 1970).

[17]     *Transamerica Corp. v. Reliance Ins. Co. of Ill.*, 1995 WL 1312656, at *4 (Del. Super. Aug. 30, 1995) (quoting *McWane*, 263 A.2d at 283).

7

action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues.'"[18]

In cases like *Ingres Corp. v. CA, Inc.*, however, the Delaware Supreme Court has held that where contracting parties have expressly agreed upon a legally enforceable forum selection clause, this Court must honor the parties' contract and enforce the clause, "even if, absent any forum selection clause, the *McWane* principle might otherwise require a different result."[19] The *McWane* doctrine is "a default rule of common law, which the parties to the litigation are free to displace by a valid contractual agreement."[20]

### 2. Neither dismissal nor a stay are warranted under *McWane*.

Guided by the principles set forth in cases like *Ingres*, I conclude that this action should not be dismissed or stayed on *McWane* grounds in favor of the prior-pending Pennsylvania Action, based on the plain language of the Redemption Agreement. Section 7.8 of the Redemption Agreement states that:

> THE PARTIES AGREE THAT JURISDICTION AND VENUE IN ANY ACTION BROUGHT BY ANY PARTY PURSUANT TO THIS AGREEMENT SHALL PROPERLY (BUT NOT EXCLUSIVELY) LIE IN ANY STATE COURT OF THE STATE OF DELAWARE LOCATED IN NEW CASTLE COUNTY OR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY IRREVOCABLY SUBMITS TO THE

---

[18] *In re the Bear Stearns Cos. S'holder Litig.,* 2008 WL 959992, at *5 (Del. Ch. Apr. 9, 2008) (quoting *McWane*, 263 A.2d at 283).

[19] *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010).

[20] *Id*. at 1146.

8

JURISDICTION OF SUCH COURTS FOR ITSELF AND IN RESPECT OF ITS PROPERTY WITH RESPECT TO SUCH ACTION. *THE PARTIES IRREVOCABLY AGREE THAT VENUE WOULD BE PROPER IN SUCH COURT, AND HEREBY WAIVE ANY OBJECTION THAT SUCH COURT IS AN IMPROPER OR INCONVENIENT FORUM FOR THE RESOLUTION OF SUCH ACTION.*[21]

Courts applying Delaware contract law "will not read a contract to render a provision or term 'meaningless or illusory.'"[22] "When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions."[23] Section 7.8 clearly and unambiguously reflects the parties' agreement that, if a lawsuit were to arise out of the Redemption Agreement, jurisdiction and venue properly would lie in this Court. Underscoring that point, the parties further agreed to submit "irrevocably" to jurisdiction in this Court for an action such as this, and they "waive[d] any objection that such court is an improper or inconvenient forum for the resolution of such action." The subject of Plaintiff's Complaint in this action— compelling arbitration under Section 1.3.4—constitutes an "action pursuant to this Agreement" for purposes of Section 7.8. The parties' irrevocable consent to this Court's jurisdiction in Section 7.8 therefore applies, and precludes me from dismissing this action on *McWane* grounds.

---

[21]   Redemption Agreement § 7.8 (italics added).

[22]   *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).

[23]   *Id*. at 1160.

9

Defendants attempt to avoid the impact of Section 7.8 by arguing that *Ingres* is inapposite because that case involved an exclusive forum selection clause, while Section 7.8 contains only a non-exclusive provision.[24] Nothing in the Supreme Court's opinion in *Ingres*, however, limited its reach to forum selection clauses that are exclusive in nature. The Court stated that, "the *McWane* principle is a default rule of common law, which the parties to the litigation are free to displace by a valid contractual agreement."[25] Here, the parties bargained for a valid contractual agreement prohibiting either side from objecting to jurisdiction or venue in this Court for a lawsuit arising out of the Redemption Agreement. The fact that jurisdiction and venue for suits related to the Redemption Agreement also may be proper in other courts does not detract from the plain language of Section 7.8, which definitively provides that jurisdiction and venue *are* proper here, making dismissal inappropriate. Furthermore, in light of the non-exclusive nature of Section 7.8, this Court conceivably could exercise its broad discretion to stay this action if the relevant considerations militated in favor of a stay. But, in the circumstances here, including the relatively early stage of this litigation, I am not persuaded that they do.

Nevertheless, I recognize that the *McWane* rule "was 'impelled by considerations of comity and the necessities of an orderly and efficient administration of justice.'"[26] In that regard, I note that the Pennsylvania Action does appear to involve similar parties litigating claims that relate to some of the same underlying facts involved in this action.

---

[24] Defs.' Reply Br. 4-6.

[25] *Ingres*, 8 A.3d at 1146.

[26] *Id.* at 1145 (quoting *McWane*, 263 A.2d at 283).

It also appears, however, that the claims in the Pennsylvania Action are significantly broader than the claims in this action. The narrow dispute in this action, relating to a Net Working Capital adjustment under the Redemption Agreement, may or may not be arbitrable. That issue is not before this Court at this time.

I also note that, in his November 12, 2014 Memorandum Opinion, Judge McHugh questioned the wisdom of the suggestion of the Baxter Parties that the ADR process with respect to the Net Working Capital dispute effectively be stayed until after the validity of their claims for fraud and breach of contract are resolved in the Pennsylvania Action.[27] Likewise, I question the wisdom of that suggestion, especially in light of Section 7.8 of the Redemption Agreement, in which the parties bargained for the right to bring suit in this Court, and mutually promised to "waive any objection" that this Court is an improper or inconvenient forum.[28] So while I am not today deciding the issue of whether this dispute is arbitrable or conclusively precluding the possibility of a stay at some point in

---

[27] *NewSpring Mezzanine Capital II, L.P.*, 2014 WL 5843598, at *2 ("Assuming for the sake of discussion that at least this one discrete issue is subject to arbitration, the suggestion of the Baxter Parties that I entertain a declaratory judgment action and declare the arbitration provision unenforceable based on breaches by Utilipath is equally unsatisfying. It would suggest that until the validity of the claim on its merits is known, the method by which to address the dispute cannot be determined.").

[28] *Ingres*, 8 A.3d at 1146; *see also Capital Gp. Cos. v. Armour,* 2004 WL 2521295, at *3 (Del. Ch. Nov. 3, 2004) ("Forum selection/consent to jurisdiction clauses are 'presumptively valid' and should be 'specifically' enforced unless the resisting party 'could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud and overreaching.'") (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

11

the future, I deny Defendants' motion to dismiss or stay Utilipath's Complaint on *McWane* grounds.[29]

### C. The Rule 15(aaa) and Rule 41(a) Issue

The second basis for Defendants' motion to dismiss is that Plaintiff has violated Court of Chancery Rule 15(aaa). As support for this argument, Defendants point to Utilipath's prior Delaware action and the Pennsylvania Action, both of which, they contend, are against "the same Defendants, raising claims predicated on the same underlying transaction and the same Redemption Agreement," as this case.[30] Because the prior Delaware action was dismissed, Defendants contend that this Complaint was filed in violation of Rule 15(aaa). This argument is unpersuasive.

Even if the previous Delaware action had asserted the same claims against the same defendants as this action does, Rule 15(aaa) would not have been violated. Rule 15(aaa) states:

> Notwithstanding subsection (a) of this Rule, a party that wishes to respond to a motion to dismiss under Rules 12(b)(6) or 23.1 by amending its pleading must file an amended complaint, or a motion to amend in conformity with this Rule, no later than the time such party's answering brief in response to either of the foregoing motions is due to be filed. In the event a party fails to timely file an amended complaint or

---

[29] I also do not mean to foreclose the possibility that, on a more developed record in this action, I might revisit the question of a stay. I note further that I have conferred with Judge McHugh, and we agree that, if the parties need some degree of coordination of aspects of these two cases or the circumstances warrant consideration of such coordination, our respective courts are willing to explore that possibility. In my view, it is premature to do so now.

[30] Defs.' Opening Br. 20.

motion to amend under this subsection (aaa) and the Court thereafter concludes that the complaint should be dismissed under Rule 12(b)(6) or 23.1, such dismissal shall be with prejudice (and in the case of complaints brought pursuant to Rules 23 or 23.1 with prejudice to the named plaintiffs only) unless the Court, for good cause shown, shall find that dismissal with prejudice would not be just under all the circumstances. Rules 41(a), 23(e) and 23.1 shall be construed so as to give effect to this subsection (aaa).[31]

Utilipath filed its complaint in the first Delaware action on December 31, 2013, and amended that complaint on April 11, 2014. On June 2, 2014, Defendants moved to dismiss the amended complaint. Rather than amend the complaint or answer the motion, Utilipath filed a voluntary dismissal under Rule 41(a)(1) on June 23. Because there is no indication from the record or from Defendants that I should infer otherwise, I infer that Utilipath's voluntary dismissal in the earlier Delaware action was filed before its answering brief in response to the motion to dismiss would have been due.[32] In such a

---

[31] Ct. Ch. R. 15(aaa). *See also* Ct. Ch. R. 41(a)(1) ("[A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs . . . . However, no such dismissal pursuant to subpart (i) above shall be effective where the complaint is subject to a motion to dismiss and the plaintiff has chosen to file an answering brief rather than seeking to amend. See Rule 15(aaa).").

[32] There does not appear to be a scheduling order for the briefing in connection with the motion to dismiss in that first Delaware action. The usual practice in the Court of Chancery, however, is that the opening brief in support of a merits-based motion (such as a motion under Rule 12(b)(6)) is due 30 days after the motion is filed, the non-moving party's answering brief is due 30 days later, and then a reply brief 15 days after that. Defendants offer no reason why the briefing in the earlier Delaware action would have been different, such that Utilipath's voluntary dismissal in that action would have been untimely.

13

circumstance, absent some reason to conclude otherwise, this Court will not bar a later complaint by the same plaintiff on Rule 15(aaa) grounds.[33] I therefore conclude that nothing in Rules 15(aaa) or 41(a) requires dismissal of the Complaint in these circumstances.

### D. The "Agreement to Agree" Issue

Finally, Defendants assert that the ADR provision in Section 1.3.4 of the Redemption Agreement is an unenforceable "agreement to agree," because it "fails to provide an adequate means of selecting an arbitrator."[34] That argument is flawed as a matter of law. The legal principle underlying Defendants' argument is that an agreement to enter into a contract in the future will not be enforceable unless it specifies all the material and essential terms of the future contract.[35] While that principle is valid, it does not apply in this case. The Redemption Agreement does not lack an essential term in this

---

[33] *See, e.g.*, *E. Sussex Assocs., LLC v. W. Sussex Assocs., LLC*, 2013 WL 2389868, at *2 (Del. Ch. June 3, 2013) ("[Rule 41(a)] plainly countenances the possibility that a motion for voluntary dismissal is a proper response to a motion to dismiss, so long as the Rule 41(a) motion is filed before an answering brief on the motion to dismiss is due."); *Stern v. LF Capital P'rs, LLC*, 820 A.2d 1143, 1146-47 (Del. Ch. 2003). The cases cited by Defendants in this regard do not hold differently. *See* Defs.' Opening Br. 22 ("As mentioned above, Rule 15(aaa) is designed to limit a plaintiffs [sic] ability to re-plead once the time to file a responsive brief has passed.") (quoting *Taubenfeld v. Marriott Int'l, Inc.*, 2003 WL 22682323, at *4 (Del. Ch. Oct. 28, 2003)).

[34] Defs.' Opening Br. 26.

[35] *See, e.g.*, *PharmAthene, Inc. v. SIGA Techs., Inc.*, 2008 WL 151855, at *13 (Del. Ch. Jan. 16, 2008).

14

regard.  Section 1.3.4 would be governed by the Federal Arbitration Act (the "FAA"). [36]

The FAA provides that:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator. [37]

Thus, if this Court were to decide that one or more disputes identified in the Complaint are arbitrable under Section 1.3.4, and the parties cannot agree as to which "independent nationally recognized accounting firm"[38] should determine the matter, the path forward would be clear.  Under the FAA, I could designate such a firm for the parties, probably after inviting each side to submit two or three candidates acceptable to

---

[36]   10 *Del. C.* § 5702(c) ("Unless an arbitration agreement complies with the standard set forth in subsection (a) of this section for the applicability of the Delaware Uniform Arbitration Act ["DUAA"], any application to the Court of Chancery to enjoin or stay an arbitration . . . shall be decided by the Court of Chancery in conformity with the Federal Arbitration Act, and such general principles of law and equity as are not inconsistent with that Act.").  No such reference to the DUAA is made in the Redemption Agreement, and Defendants do not contest that the FAA applies in this regard.

[37]   9 U.S.C.A. § 5 (West 2014).

[38]   Redemption Agreement § 1.3.4.

them. I therefore reject Defendants' argument that the Complaint must be dismissed because Plaintiff seeks to enforce an unenforceable agreement to agree.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or stay Plaintiff's Complaint is denied.

**IT IS SO ORDERED**.