Lillian RIEDEL, Plaintiff
Below, Appellant,

v.

ICI AMERICAS INC., Defendant
Below, Appellee.

No. 156, 2008.

Supreme Court of Delaware.

Submitted: Dec. 10, 2008.
Decided: March 4, 2009.

Thomas C. Crumplar (argued), Jacobs & Crumplar, P.A., Wilmington, Delaware for appellant.

Mark L. Reardon and Krista Reale Samis (argued), Elzufon Austin Reardon Tarlov & Mondell, P.A., Wilmington, Delaware; and, John C. Phillips Jr. and David A. Bilson, Phillips, Goldman & Spence, P.A., Wilmington, Delaware for appellee.

John C. Phillips, Jr., Phillips, Goldman & Spence, P.A., Wilmington, Delaware as amici curiae.

STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the court en banc.

STEELE, Chief Justice.

Lillian Riedel brought a negligence action in the Superior Court, alleging that her husband's employer of nearly thirty years, ICI Americas, Inc., failed to prevent her husband from taking asbestos home on his clothing and failed to warn her of the dangers of asbestos exposure. Mrs. Riedel claimed these failures to act proximately caused her to develop asbestosis. ICI timely moved for summary judgment. The trial judge granted the motion on the basis that ICI and Mrs. Riedel did not share a legally significant relationship that would create a duty ICI owed to her.

In this appeal, Mrs. Riedel alleges that the trial judge erred by focusing on her relationship with ICI, rather than on the foreseeability of her harm. Contrary to her characterization of ICI's alleged misconduct to the trial judge (*i.e.,* ICI's alleged failures to warn or prevent, which are fairly described as allegations of nonfeasance), Mrs. Riedel *now* claims that ICI acted affirmatively by releasing asbestos into the environment. She *now* describes

ICI's alleged negligence as "nothing less than actively releas[ing] asbestos toxins out of its plant and into [her] home," which would constitute acts of misfeasance.

Because Mrs. Riedel presented a theory of negligence grounded in nonfeasance to the trial judge and did not fairly present a claim of misfeasance, she is precluded from arguing on appeal that the trial judge erred by analyzing ICI's summary judgment motion in terms of nonfeasance. We also find no merit to Mrs. Riedel's alternative argument that she and ICI shared a legally significant relationship. Therefore, we AFFIRM the trial judge's grant of summary judgment to ICI.

### FACT AND PROCEDURAL BACKGROUND

Mrs. Riedel's husband, John Riedel, Sr., worked at ICI's Atlas Point facility in New Castle, Delaware from approximately 1962 to 1990. Although it originally operated as an explosives manufacturer, ICI's principal business during the twenty-eight years that Mr. Riedel worked at Atlas Point consisted of research, development, and manufacture of chemicals, pharmaceuticals, and various forms of insulation. At some point, ICI incorporated asbestos into its research and product development. Mrs. Riedel alleges that ICI sprayed asbestos in the building where Mr. Riedel worked and that ICI used asbestos in a variety of other settings at Atlas Point.

Although ICI disagrees, Mrs. Riedel offered some evidence that ICI knew of the dangers of asbestos exposure during Mr. Riedel's employment. Mrs. Riedel claims that ICI did not provide uniforms, locker rooms, or laundry facilities to its employees, and did not warn either Mr. or Mrs.

Riedel of the potential hazards to them created by Mr. Riedel wearing, and Mrs. Riedel laundering, his work clothes at home. Mrs. Riedel regularly laundered Mr. Riedel's work clothes, which she alleges often appeared to be covered with an unknown dusty material.

During Mr. Riedel's employment at Atlas Point, ICI occasionally published *The Atlas Family*, a magazine that provided tips for driving safely, planning safe vacations, and generally staying safe. At least one edition of that publication warned of hidden dangers around the house, but none warned of the dangers of wearing or laundering asbestos tainted clothing.

In 2000, Mrs. Riedel stopped working due to her experiencing severe shortness of breath. In 2003, Dr. Susan Daum diagnosed Mrs. Riedel with asbestosis based, in part, on Mrs. Riedel's exposure to her husband's work clothes. Today, Mrs. Riedel breathes with the assistance of an oxygen tank.

On July 13, 2004, Mrs. Riedel filed this negligence action against ICI. Shortly before trial, ICI moved for summary judgment on the ground that it owed no duty to Mrs. Riedel. The trial judge granted that motion on December 21, 2007 and denied Mrs. Riedel's later motion for reargument on March 12, 2008. Mrs. Riedel filed this appeal on March 25, 2008, and we heard oral argument on September 10, 2008. By letter dated October 3, 2008, we asked the parties for supplemental briefs in response to several questions relating to the potential adoption of certain sections of the American Law Institute Restatement (Third) of Torts: Liability for Physical Harm.[1]

---

**1.** Unlike the Restatement and Restatement (Second) of Torts, the drafters separated the Restatement (Third) of Torts into topical divisions. Liability for Physical Harm applies to

the case at bar. The other divisions are Apportionment of Liability and Products Liability. The ALI drafting committee and general members of the ALI approved the substance

## DISCUSSION

### I. The Trial Judge Correctly Focused On the Relationship Between Mrs. Riedel and ICI

■ "We review a trial judge's grant of summary judgment *de novo* to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law." [2]

■ To prevail in her negligence action against ICI, Mrs. Riedel needed to establish that: ICI owed her a duty of care; ICI breached that duty; and ICI's breach proximately caused Mrs. Riedel's injury. [3] Whether ICI owed Mrs. Riedel a legal duty is a question of law for the Court to determine. [4]

■ Generally, to determine whether one party owed another a duty of care, we follow the guidance of the Restatement (Second) of Torts. [5] On the eve of oral argument before this Court, the Tennessee Supreme Court decided *Satterfield v. Breeding Insulation Co.* [6] In *Satterfield*, the court relied on certain sections and definitions from the latest draft of the Restatement (Third) of Torts: Liability for Physical Harm. [7] Following oral argument, we asked the parties for supplemental briefs regarding whether this Court should adopt several sections of the Restatement (Third) of Torts and if so, how to apply those sections to the case at bar. [8]

At this time, we decline to adopt any sections of the Restatement (Third) of Torts. The drafters of the Restatement (Third) of Torts redefined the concept of duty in a way that is inconsistent with this Court's precedents and traditions. The Restatement (Third) of Torts creates duties in areas where we have previously found no common law duty and have deferred to the legislature to decide whether or not to create a duty. For example, under the Restatement (Third) of Torts, tavern owners and social hosts would owe a duty to third parties injured when they

---

of the Restatement (Third) of Torts: Liability for Physical Harm (with the exception of two comments not relevant here) in 2005. The draft is not yet published in final form because the ALI is expanding its undertaking to include chapters on emotional harm and landowner liability.

2. *Estate of Rae v. Murphy*, 956 A.2d 1266, 1269–70 (Del.2008) (quotations omitted).

3. *See New Haverford P'ship v. Stroot*, 772 A.2d 792, 798 (Del.2001).

4. *See Naidu v. Laird*, 539 A.2d 1064, 1070 (Del.1988).

5. *See, e.g. Furek v. Univ. of Delaware*, 594 A.2d 506, 520 (Del.1991); *Naidu*, 539 A.2d at 1072.

6. 266 S.W.3d 347 (Tenn.2008).

7. *See generally id.*

8. We asked the parties three questions:

(1) Should this Court adopt as the law of Delaware the provisions of the Restatement (Third) of Torts, including specifically Sections 6, 7, 37, 38, 39, 40 and 41, as the principles of law that govern the analysis of the issues presented and the disposition of this case?

(2) If so, what does each side contend is the appropriate analysis of the relevant Third Restatement provisions as applied to the facts of this case?

(3) Were this Court to conclude that it should create a duty of some scope under Section 6 of the Third Restatement, Section 7(b) authorizes the Court to determine, nonetheless, that "an articulated countervailing principle of policy warrants denying or limiting liability in a particular class of cases...." Assuming that Section 7(b) is applicable, should such a "countervailing principle of policy" be declared by this Court, or should the Court defer to the legislature as the appropriate branch of government to declare any such policy?

negligently provided alcohol to a patron or guest. As we recently stated in *Shea v. Matassa:* "This Court, in an unbroken line of cases over the past twenty-five years, has determined that the establishment of a Dram Shop cause of action presents a social policy issue for the legislature, not the Court." [9] Given our history of deferring to the General Assembly's apparent distaste for a Dram Shop act,[10] it would be incongruous for this Court now to adopt the Restatement (Third) of Torts, thereby creating a common law duty that directly contravenes the primacy of the legislative branch in resolving this question.

We find no consolation in § 7(b) of the Restatement (Third) of Torts, which allows courts to decide that "an articulated countervailing principle of policy warrants denying or limiting liability in a particular class of cases" and to decree "that the defendant has no duty or that the ordinary duty of reasonable care requires modification." [11] As we explained in the context of Dram Shop liability, the General Assembly decides these matters of social policy, not the courts. This Court's charge does not include "articulating general social norms of responsibility." [12]

Whether the expansive approach for creating duties found in the Restatement (Third) of Torts is viewed as a step forward or backward in assisting courts to apply the common law of negligence, it is simply too wide a leap for this Court to take. Therefore, at the present time we continue to follow the Restatement (Second) of Torts.

■ Section 4 of the Restatement (Second) of Torts defines duty as follows:

The word "duty" is used throughout the Restatement of this Subject to denote the fact that the actor is required to conduct himself in a particular manner at the risk that if he does not do so he becomes subject to liability to another to whom the duty is owed for any injury sustained by such other, of which that actor's conduct is a legal cause.

The concept of duty most frequently arises in the Restatement's sections addressing negligence.[13] Comment (b) further explains that duty is useful both "in describing the requirement that action shall be taken for the protection of the interests of others" and "to describe the requirement that the actor, if he acts at all, must exercise reasonable care to make his acts safe for others."

---

9. 918 A.2d 1090, 1093 (Del.2007) (citing *McCall v. Villa Pizza, Inc.,* 636 A.2d 912, 913 (Del.1994); *Acker v. S.W. Cantinas, Inc.,* 586 A.2d 1178, 1180 (Del.1991); *Oakes v. Megaw,* 565 A.2d 914, 916 (Del.1989); *Samson v. Smith,* 560 A.2d 1024, 1027 (Del.1989); *Wright v. Moffitt,* 437 A.2d 554, 556 (Del. 1981)).

10. *See Shea,* 918 A.2d at 1094–95.

11. Comment (c) to § 7 provides the following example of an application of § 7(b):

In deciding whether to adopt a no-duty rule, courts often rely on general social norms of responsibility. For example, many courts have held that commercial establishments that serve alcoholic beverages have a duty to use reasonable care to avoid

injury to others who might be injured by an intoxicated customer, but that social hosts do not have a similar duty to those who might be injured by their guests. Courts often justify this distinction by referring to commonly held social norms about responsibility. The rule stated in this Section does not endorse or reject this particular set of rules. It does support a court's deciding this issue as a categorical matter under the rubric of duty, and a court's articulating general social norms of responsibility as the basis for this determination.

12. *See* Restatement (Third) of Torts: Liability for Physical Harm § 7 cmt. c.

13. Restatement (Second) of Torts Comment (b) to § 4.

Section 282 of the (Second) Restatement defines negligence as "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm," not including "conduct recklessly disregardful of an interest of others." According to § 284:

> Negligent conduct may be either:
>
> (a) an act which the actor as a reasonable man should recognize as involving an unreasonable risk of causing an invasion of an interest of another, or
>
> (b) a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do.

Section 302 further explains that:

> A negligent act or omission may be one which involves an unreasonable risk of harm to another through either
>
> (a) the continuous operation of a force started or continued by the act or omission, or
>
> (b) the foreseeable action of the other, a third person, an animal, or a force of nature.

Although Comment (a) to § 302 notes that § 302 "is concerned only with the negligent character of the actor's conduct, and not with his duty to avoid the unreasonable risk[,]" the comment proceeds to explain the dissimilar duties owed by "one who

merely omits to act" versus one "who does an affirmative act." As Comment (a) explains, "anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act." On the other hand, "one who merely omits to act" generally has no duty to act, unless "there is a special relation between the actor and the other which gives rise to the duty." [14]

Comment (a) to § 302 refers to § 314 for further discussion about "the distinction between act and omission, or 'misfeasance' and 'non-feasance.'" Section 314 outlines the general rule that, "[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." Comment (a) to Section 314 notes, however, that Sections 314A[15] and 316 through 324A[16] provide exceptions to this general rule. Comment (c) to § 314 explains the origin and development of the requirement of a special relationship between the parties to establish liability for nonfeasance:

> The origin of the rule lay in the early common law distinction between action and inaction, or "misfeasance" and "nonfeasance." In the early law one who injured another by a positive affirmative

**14.** Restatement (Second) of Torts § 302 cmt. a.

**15.** Restatement (Second) of Torts § 314A Special Relations Giving Rise to Duty to Aid or Protect (including common carriers, innkeepers, possessors of land who hold it open to the public, and those who are required by law to take or who voluntarily take the custody of another under circumstances such as to deprive the other of his normal opportunities for protection).

**16.** Restatement (Second) of Torts: § 316 Duty of Parent to Control Conduct of Child; § 317 Duty of Master to Control Conduct of

Servant; § 318 Duty of Possessor of Land or Chattels to Control Conduct of Licensee; § 319 Duty of Those in Charge of Person Having Dangerous Propensities; § 320 Duty of Person Having Custody of Another to Control Conduct of Third Persons; § 321 Duty to Act When Prior Conduct is Found to be Dangerous; § 322 Duty to Aid Another Harmed by Actor's Conduct; § 323 Negligent Performance of Undertaking to Render Services; § 324 Duty of One Who Takes Charge of Another Who is Helpless; § 324(a) Liability to Third Person for Negligent Performance of Undertaking.

act was held liable without any great regard even for his fault. But the courts were far too much occupied with the more flagrant forms of misbehavior to be greatly concerned with one who merely did nothing, even though another might suffer serious harm because of his omission to act. Hence liability for non-feasance was slow to receive any recognition in the law. It appeared first in, and is still largely confined to, situations in which there was some special relation between the parties, on the basis of which the defendant was found to have a duty to take action for the aid or protection of the plaintiff.

The (Second) Restatement does not provide any further guidance, beyond the sections discussed above, for determining whether a claim is one of misfeasance or nonfeasance.

█ Although the trial judge did not explicitly address whether Mrs. Riedel alleged misfeasance or nonfeasance, he considered Mrs. Riedel's claim in a manner consistent with the (Second) Restatement's analysis of nonfeasance. Finding no legally significant special relationship between Mrs. Riedel and ICI, the trial judge determined that ICI owed no duty to Mrs. Riedel. Although the trial judge's analysis strayed from the guidance of the (Second) Restatement, our review of the record leads us to agree with the trial judge's conclusion.

It is important to note that Mrs. Riedel presented significantly different theories of negligence to the trial judge and to this Court. At trial, Mrs. Riedel characterized ICI's alleged negligence as a failure either to prevent Mr. Riedel from taking asbestos home or to warn the Riedels of the dangers associated with Mr. Riedel wearing his work clothes home from the workplace. That is, to the trial judge Mrs. Riedel presented a theory of nonfeasance. Now,

however, she claims that ICI's affirmative release of asbestos into the environment constitutes misfeasance.

To us, Mrs. Riedel claims that "[t]here is simply no principled way to distinguish ICI's asbestos *release on its employee's clothes* with another entity's release of a deadly toxin via another vector such as the air." She asserts that "ICI did nothing less than actively release asbestos toxins out of its plant and into Mrs. Riedel's home." At oral argument, Mrs. Riedel's counsel stated:

ICI by its affirmative act of releasing toxic asbestos into the environment outside its plant became subject to a duty to all foreseeable victims of harm caused by its misfeasance. Here, the vehicle of transmission of the toxic asbestos to the Riedel home was the clothes of her husband, a totally innocent party. This form of transmission is no different legally than if the asbestos was improperly released into the environment by ICI and transmitted by the wind to the Riedel home ... or was dropped, dumped into a stream on ICI's property and then flowed to the Riedel family well.

Mrs. Riedel presented a vastly different theory of negligence to the trial judge. Contrary to her claim that there is "no principled way to distinguish ICI's asbestos release on its employee's clothes with another entity's release of a deadly toxin via another vector such as the air," she made precisely that distinction in her complaint and at the summary judgment oral argument. In Count I of her complaint, she claimed: "neighborhood exposure by living in close proximity of the Haveg plant from approximately 1971 through the end of the 1970's." At the summary judgment oral argument, Mrs. Riedel's counsel compared the case at bar with another case with which the trial judge was apparently familiar:

When your Honor mentioned in terms of pollution, I mean we had this exact case, if your Honor will recall, the *Ward* case where you heard it as a mesothelioma case. We had two claims just as we do in Riedel. Mrs. Riedel has a claim because she was next to the Haveg facility, for environmental claim, and her husband worked at ICI, household claim.

At trial, Mrs. Riedel clearly distinguished her claim against ICI from her claims for environmental asbestos exposure.

Mrs. Riedel's trial strategy also contradicts her assertion on appeal that Mr. Riedel is a "totally innocent party." In her motion for reargument, Mrs. Riedel argued not that ICI acted affirmatively but rather that ICI was "vicariously responsible" for "Mr. Riedel's negligence." Mrs. Riedel asserted that the principal, ICI, should be liable for the acts of its agent, Mr. Riedel.

At the summary judgment oral argument, Mrs. Riedel's counsel stated:

> So from a standpoint in terms of legal relationship and duty, I look at as, first of all, and I mean there's no dispute in the facts here, they didn't argue that, is that Mr. Riedel was exposed to asbestos as an employee doing his work at ICI and yet they were negligent in terms of how they did that. Didn't warn him, allowed it to be used.
>
> Furthermore, they were negligent in that they didn't take steps to prevent the contamination of his household because of his work and I mean in terms of—I think it really goes down to foreseeability. I mean in terms of duty, I think to try to say legal relationship, there is a legal relationship. It's called husband and wife.

We conclude that, although Mrs. Riedel may have presented a theory of misfeasance in characterizing Mr. Riedel's claim, she presented a nonfeasance theory in characterizing her own.

At the summary judgment oral argument, Mrs. Riedel's counsel told the trial judge that "I think the narrative case you should look at is what if the patient, crazy husband—and the psychiatrist should have realized it was a risk—strangles his wife? That's almost more foreseeable in terms of—than a stranger in terms of the motorist." This "narrative case" is a variation of *Naidu v. Laird,* where a widow brought a negligence action against a psychiatrist alleging that the psychiatrist acted with gross negligence by releasing a mental patient who later killed the widow's husband while driving an automobile in a psychotic state.[17] In *Naidu,* we rejected the psychiatrist's argument that he owed no duty to the injured motorist.[18] We explained:

> Generally, there is no duty to control the conduct of a third person to prevent him from causing harm to another unless:
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.[19]

In accordance with the California Supreme Court's holding in *Tarasoff v. Regents of the University of California,*[20] we "recognized the existence of a special relationship

---

17. *See generally* 539 A.2d 1064.

18. *Id.*

19. *Id.* at 1072 (citing Restatement (Second) of Torts § 315).

20. 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976).

between a psychotherapist and a patient which provides the underlying basis for imposition of an affirmative duty owed to persons other than the patient."[21] Our holding in *Naidu* is entirely consistent with the (Second) Restatement's requirement of a legally significant relationship in negligence actions grounded in nonfeasance.

In the altered version of *Naidu* that Mrs. Riedel's counsel presented as the "narrative case," the negligently released patient goes home and strangles his wife, rather than causing an automobile accident with a stranger. This "narrative case" clearly demonstrates that Mrs. Riedel presented a nonfeasance theory of negligence to the trial judge. Mrs. Riedel viewed ICI's negligence as a failure to control its employees. In her motion for reargument, Mrs. Riedel stated that "the harm was caused by [ICI] because it was negligent in training, supervising, and controlling [Mr. Riedel.]"

Given the foregoing, we are not persuaded by Mrs. Riedel's assertion that she pled misfeasance in Count II of her complaint. Referring to ICI, Count II states: "Her husband's employers controlled the safety and working conditions and/or promoted the use of asbestos, at the sites where the plaintiff's husband worked, including the use, installation, and removal of asbestos and asbestos-containing products." This allegation merely supports Mrs. Riedel's theory at trial that ICI acted with misfeasance in relation to Mr. Riedel (by exposing him to asbestos) and with nonfeasance in relation to Mrs. Riedel (by failing to control Mr. Riedel.)

Because Mrs. Riedel did not fairly present her current theory of misfeasance to the trial judge, Supreme Court Rule 8 precludes her from arguing to us that the trial judge erred by focusing on her lack of a legally significant relationship with ICI.[22] We "adhere to the well settled rule which precludes a party from attacking a judgment on a theory which was not advanced in the court below."[23]

## II. ICI and Mrs. Riedel Shared No Legally Significant Relationship

■ Mrs. Riedel also asserts that, even if she is held to a theory of nonfeasance, she and ICI had a legally significant relationship. First, Mrs. Riedel argues that "ICI recognized that an employer has a relationship with its employees' immediate family members when it published 'The Atlas Family' for the benefit of 'Atlas employees and their families.' " To support her claim, Mrs. Riedel points to the spring 1966 edition of *The Atlas Family*, which she claims "was devoted to keeping the 'many Atlas Families' safe at home." She also claims ICI's "Public Relations Department ostensibly instructed Atlas families how to live in a 'Home Safe Home,' " by publishing a "three part series on off the job safety." Second, Mrs. Riedel summarily asserts that "ICI recognized this relationship by presumably providing health and other benefits to their employees and their employees' spouses and children."

In response, ICI argues that it did not share a legally significant relationship with Mrs. Riedel. ICI cites the trial judge's finding that he "is unaware of any basis in

21. *Naidu*, 539 A.2d at 1072.

22. *See In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 55 (Del.2006) (rejecting an argument that we found "borders on being unfairly presented, since the appellants are taking the trial court to task for adopting the very

analytical approach that they themselves used in presenting their position'').

23. *Danby v. Osteopathic Hosp. Ass'n of Del.*, 104 A.2d 903, 907–08 (Del.1954).

Delaware law upon which to impose a duty upon ICI to Mrs. Riedel as the employer of her spouse."[24] ICI also disputes Mrs. Riedel's assertion of a relationship created "by presumably providing health care and other benefits." ICI cites *In re N.Y. City Asbestos Litig. (Holdampf v. A.C. & S., Inc.)*[25] for the proposition that "[t]here is no authority suggesting that the [defendant employer] owed a duty of care to protect [take home plaintiff] against its allegedly negligent acts because she was a beneficiary of her husband's work-related benefits."

ICI denies that its newsletters regarding "off-the-job safety" created a duty to protect Mrs. Riedel. First, it contends that Mrs. Riedel proffered no evidence that she either read or relied on the newsletters. Second, even if she had read or relied on them, ICI likens its actions to an employer providing safety manuals to an independent contractor which, ICI urges, does not create a duty under Delaware law.

Under the (Second) Restatement sections discussed above that describe the special relationships that give rise to a duty to aid or protect, ICI owed no duty to Mrs. Riedel. There are no valid arguments that ICI and Mrs. Riedel shared a legally significant relationship under Sections: 314A, 316, 317, 318, 319, 320, 321,

322, 324, or 324A.[26] Therefore, our review is limited to § 323, which is entitled Negligent Performance Of Undertaking To Render Services.

Section 323 provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Mrs. Riedel asserts that ICI created a duty to her by publishing *The Atlas Family* with its advice regarding home safety. She argues that she relied on ICI's undertaking the service of warning her about various household dangers.

We disagree. ICI's occasional publication of a newsletter providing tips for its employees and their families to stay safe at home created no legally significant relationship between Mrs. Riedel and ICI. There is no evidence that ICI undertook to warn its employees' families of all dangers. The trial judge concluded that Mrs. Riedel and ICI are "legal strangers in the context

---

**24.** *See In re Asbestos Litig.*, 2007 WL 4571196, at * 11.

**25.** 5 N.Y.3d 486, 806 N.Y.S.2d 146, 840 N.E.2d 115, 121 (2005).

**26.** Restatement (Second) of Torts § 314A Special Relations Giving Rise To Duty To Aid Or Protect (including common carriers, innkeepers, possessors of land who hold it open to the public, and those who are required by law to take or who voluntarily take the custody of another under circumstances such as to deprive the other of his normal opportunities for protection). *See also, e.g.*, § 316 Duty of Par-

ent to Control Conduct of Child; § 317 Duty of Master to Control Conduct of Servant; § 318 Duty of Possessor of Land or Chattels to Control Conduct of Licensee; § 319 Duty of Those in Charge of Person Having Dangerous Propensities; § 320 Duty of Person Having Custody of Another to Control Conduct of Third Persons; § 321 Duty To Act When Prior Conduct Is Found To Be Dangerous; § 322 Duty to Aid Another Harmed by Actor's Conduct; § 324 Duty of One Who Takes Charge of Another Who Is Helpless; § 324A Liability To Third Person For Negligent Performance Of Undertaking.

of negligence." [27]  We agree.  ICI owed Mrs. Riedel no duty, and the trial judge correctly granted ICI's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.

---

**27.**  *In re Asbestos Litig.,* 2007 WL 4571196, at       * 12.