# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN RE: ASBESTOS LITIGATION     )
                              )
                              )
ELIZABETH RAMSEY,           )
Administrator of the Estate of      )
DOROTHY RAMSEY, deceased,   )
                              )
             Plaintiff,          )
                              )
      v.                      )     C.A. No. N14C-01-287 ASB
                              )
ATLAS TURNER LTD., *et al.,*     )
                              )
          Defendants.      )

## OPINION

Submitted: December 8, 2016
Decided: February 2, 2017

*Upon Defendant Georgia Southern University Advanced Development Center's Motion for Summary Judgment,* **GRANTED.**

Thomas Crumplar, Esquire, and Raeann Warner, Esquire, of Jacobs & Crumplar, P.A., Wilmington, Delaware. *Attorneys for Plaintiff Elizabeth Ramsey.*

Eileen M. Ford, Esquire, and Megan T. Mantzavinos, Esquire, of Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., of Wilmington, Delaware. *Attorneys for Defendant Georgia Southern University Advanced Development Center.*

**MEDINILLA, J.**

# INTRODUCTION

Dorothy Ramsey ("Plaintiff"), through her estate, alleges Defendant Georgia Southern University Advanced Development Center ("Herty") negligently failed to warn her of the risks of take-home exposure to its asbestos paper product used at her husband's workplace from 1976-1980.[1] She argues that Herty owed her a duty to warn because it was foreseeable that her husband would transport home asbestos debris that adhered to his uniform and unwittingly expose Plaintiff to this debris when she laundered his clothes. She alleges that Herty's failure to warn her of this risk was the proximate cause of her lung cancer.

Herty moves for summary judgment and argues that it did not owe Plaintiff a duty of care.[2] Defendant manufacturer argues that Plaintiff's allegations are claims of nonfeasance and require Plaintiff to identify a "special relationship" before liability may attach to its alleged failure to act. Further, Herty argues that Plaintiff cannot identify a "special relationship" and no such special relationship exists. Conversely, Plaintiff characterizes her claims as affirmative acts of negligent

---

[1] The terms "take-home" and "household" exposure are used colloquially and interchangeably to describe the type of exposure alleged by Plaintiff: exposure brought into Plaintiff's home as a result of another household member's external exposure to asbestos. *See In re Asbestos Litig.*, 2007 WL 4571196, at *1 n.1 (Del. Super. Dec. 21, 2007).

[2] Herty also moves for summary judgment on product nexus and causation, strict liability, and civil conspiracy. Plaintiff does not contest summary judgment as to strict liability and civil conspiracy. Since the Court finds that Herty did not owe a duty of care to Plaintiff, the issue of product nexus and causation is moot.

conduct, *i.e.*, misfeasance. As such, she argues against dismissal and contends that Herty owed her a duty of care to warn her of the risks of take-home asbestos exposure because it knew or should have known that its product would adhere to the clothes of employees and expose household members.

The central issue in this Motion is whether *Price v. E.I. DuPont de Nemours & Co.* and *Riedel v. ICI Americas Inc.* apply to the facts of this case.[3] Both *Price* and *Riedel* dealt with claims of negligence asserted against the *employer* of the plaintiff's spouse. Herty contends that both cases are applicable to a spouse's claim of take-home asbestos exposure against a *manufacturer* who supplies an asbestos product to the employer of the plaintiff's spouse. Plaintiff argues that both cases are inapt because Herty was not Plaintiff's husband's employer.

The Court finds that this case fits within the legal parameters and rationale of *Price* and *Riedel*. Consistent with both cases, the Court finds that Plaintiff alleges claims of nonfeasance. Thus, Herty does not owe Plaintiff a general duty of care. Further, the Court finds that Plaintiff has not identified any evidence of a special relationship between herself and Herty. Therefore, Herty has met its burden of proving that no duty of care exists and Herty's Motion for Summary Judgment is **GRANTED**.

---

[3] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162 (Del. 2011) (3-2); *Riedel v. ICI Americas Inc.*, 968 A.2d 17 (Del. 2009).

3

## FACTUAL AND PROCEDURAL BACKGROUND

### *Factual Background*

Robert Ramsey, Plaintiff's husband, began working at Haveg Industrial Plant ("Haveg") in Marshallton, Delaware in 1968.[4] From 1973 to 1979, Mr. Ramsey worked at Haveg's Chemtite Department located on the Marshallton campus.[5] Working in the Chemtite Department, he manufactured pipe and pipe fittings using resin-soaked asbestos paper.[6]

From 1976 until 1980, Herty manufactured and supplied asbestos paper to Haveg.[7] Haveg purchased tons of Herty's asbestos paper during this period.[8] Haveg also purchased asbestos paper and asbestos-containing products from other manufacturers while Mr. Ramsey worked in the Chemtite Department.[9]

Plaintiff alleges that Mr. Ramsey's clothes were laden with asbestos dust emitted from Herty's paper product during his work fashioning pipe and pipe fittings at Haveg.[10] With his clothes caked in debris from Herty's product, Mr.

---

[4] *See* Plaintiff's Response Brief at 1 [hereinafter Plaintiff's Br.].

[5] *See id.* at 1-2.

[6] *See id.*

[7] *See* Defendant's Opening Br. at 4-5 [hereinafter Defendant's Br.].

[8] *See* Plaintiff's Br. at Exhibit E (reproducing product-order logs at Haveg during this period).

[9] *See* Defendant's Br. at 5.

[10] *See* Plaintiff's Br. at 1.

Ramsey returned home.[11] Once home, Plaintiff shook out his work uniform and washed it twice a week in their basement.[12] She alleges that her household exposure to asbestos from laundering her husband's clothes was the proximate cause of her lung cancer.[13]

## *Procedural Background*

Plaintiff filed her Complaint against Herty and other manufacturers of asbestos-containing products at Haveg during Mr. Ramsey's employment.[14] The Complaint alleges that Herty, among other manufactures: (1) "Chose not to adequately warn" Plaintiff of the potential for household exposure to its product; (2) "Chose not to adequately test, research and investigate" the effects of household exposure; (3) "Chose not to adequately package, distribute and use asbestos" so as to minimize the release of asbestos fibers; and (4) "Chose not to take adequate steps to recall" its asbestos paper product or make it safer.[15]

---

[11] *See id.* at 1-2.

[12] *See id.* at 2.

[13] *See id.* at 1. *See* Defendant's Br. at 1.

[14] *See* Original Complaint, *Ramsey v. Atlas Turner, Ltd.*, C.A. No. 14C-01-287 ASB (Del. Super. Jan. 31, 2014) (emphasis added) [hereinafter Complaint]. *See also* D.I. #54929727.

[15] Complaint at ¶ 16.

Plaintiff passed away during this litigation and Elizabeth Ramsey was replaced as a personal representative of Plaintiff's estate.[16] Herty then filed the pending Motion for Summary Judgment.[17] Having considered the arguments in the parties' filings and at oral argument on the Motion, the issue is ripe for decision.[18]

## CONTENTIONS OF THE PARTIES

The salient issue in this Motion is whether manufacturer Herty owed a duty of care to Plaintiff. On this issue, the parties argue two conceptually distinct bases for the existence or nonexistence of a duty of care. Herty's argument proceeds as if this case represents a logical extension of *Price* and *Riedel*. It contends that Plaintiff's allegations are properly characterized as alleged failures to act, *i.e.*, nonfeasance.[19] As such, Herty would only owe a duty of care to Plaintiff if she stood in a special relationship with Herty.[20] Herty highlights the significance of

---

[16] Plaintiff amended her Complaint on August 27, 2015 to reflect this substitution. *See* D.I. #57780529. She again amended the Complaint while this Opinion was pending, on January 4, 2017, amending the relevant years of Mrs. Ramsey's alleged exposure. *See* D.I. #60030527.

[17] *See* D.I. #57991399 (filed October 8, 2015). Plaintiff's Response Brief was filed on October 20, 2015. *See* D.I. #58095805. Defendant's Reply Brief was filed on November 12, 2015. *See* D.I. #58155944. The Motion was subsequently continued and then re-noticed on June 21, 2016. *See* D.I. #59174296. The Court heard oral argument on the Motion on December 8, 2016 and reserved decision. *See* D.I. #59955468.

[18] Although the Court originally advised the parties that the Court would seek additional briefing on the issues addressed in this Opinion, the Court subsequently determined that no additional briefing was necessary to resolve Herty's Motion.

[19] Defendant's Br. at 6. *See also* Defendant's Reply Brief at 3.

[20] Defendant's Br. at 6.

the parties' relationship as even more removed than in the employer-employee's spouse context: "Logic, therefore, suggest[s] that, due to the even further attenuated relationship between Herty and Mrs. Ramsey, no liability should exist."[21]

Plaintiff argues that this case is distinguishable from *Price* and *Riedel* and should be analyzed under general principles of tort law. Casting Herty's argument as a "radical expansion" of *Price* and *Riedel*, she identifies Herty's affirmative act as that of all manufacturers: making and releasing an asbestos-containing product into the stream of commerce.[22] Accordingly, Plaintiff argues that Herty owed a duty of reasonable care to all foreseeable plaintiffs of its negligence. Thus, Plaintiff contends that Herty's duty was automatic: to exercise care as a reasonably prudent manufacturer under the circumstances.[23]

## STANDARD OF REVIEW

The burden of proof on a motion for summary judgment under Rule 56 falls on the moving party to demonstrate that "there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of

---

[21] *Id.* at 6.

[22] *See* Plaintiff's Br. at 9.

[23] *See id.* (citing *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 167 (Del. 2011)).

law."[24] If the moving party satisfies its initial burden, the non-moving party must sufficiently establish the "existence of one or more genuine issues of material fact."[25] Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[26] "All facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[27]

## DISCUSSION

A plaintiff claiming another negligently caused her harm must prove: the defendant owed her a duty of care; the defendant breached this duty; and the breach proximately caused her injuries.[28] While issues of breach and causation are often left to a jury to decide, the issue of whether the defendant owed the plaintiff a duty rests with the Court.[29] Delaware courts generally look to the Restatement

---

[24] DEL. SUPER. CT. CIV. R. 56(c).

[25] *Quality Elec. Co., Inc. v. E. States Const. Serv., Inc.*, 663 A.2d 488, 1995 WL 379125, at *3-4 (Del. 1995) (TABLE). *See also* Rule 56(e); *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).

[26] *Ebersole v. Lowengrub*, 180 A.2d 467, 469-70 (Del. 1962).

[27] *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. 1986) (citing *Mechell v. Palmer*, 343 A.2d 620, 621 (Del. 1975); *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748, 752 (Del. Super. 1978)).

[28] *See Doe 30's Mother v. Bradley*, 58 A.3d 429, 447 (Del. Super. 2012) (citing *Price*, 26 A.3d at 166).

[29] *See Price*, 26 A.3d at 166 (citing *Riedel v. ICI Americas Inc.*, 968 A.2d 17, 20 (Del. 2009)). *See also Naidu v. Laird*, 539 A.2d 1064, 1070 (Del. 1988) (holding breach and causation issues

(Second) of Torts ("Restatement") to determine whether a duty exists between the parties.[30]

The parties disagree on the proper approach to duty of care. Herty proceeds to analyze duty of care as the Supreme Court did in *Price* and *Riedel*, asking whether Plaintiff's allegations are based in misfeasance or nonfeasance. Plaintiff argues that this approach is inapposite because it would unnecessarily expand the holdings of those cases to all claims of take-home asbestos exposure arising out of the employment context. Contending that this broader conclusion was not intended in *Price*, Plaintiff analyzes the issue of duty pursuant to traditional product liability and negligence jurisprudence.

The present issue appears to be a novel one following the Court's decision in *Price*: are *Price* and *Riedel* limited to take-home asbestos cases where the plaintiff-spouse alleges the *employer* failed to take adequate steps to protect the plaintiff? Or are they equally applicable to cases where a *manufacturer* supplies an asbestos-containing product that poses a risk of household exposure to the employee's spouse? Because the answers to these two questions impact the Court's analysis of the present Motion, the Court will outline both Plaintiff and Herty's distinct

---

were properly left to jury in wrongful death action where psychiatrist released psychiatric patient who subsequently killed plaintiff's decedent in automobile accident).

[30] *Doe 30's Mother*, 58 A.3d at 447 (citing *Price*, 26 A.3d at 167 n.9; *Riedel*, 968 A.2d at 22).

approaches to this issue before determining whether Herty owed Plaintiff a duty of care.

## I. Plaintiff's Approach: A Manufacturer's General Duty of Care in Delaware

Delaware courts have consistently held that a manufacturer owes a duty of care to warn reasonably foreseeable plaintiffs of an unreasonable risk of harm associated with its product.[31] "Among the essential elements that a plaintiff must prove in a negligence-based products liability case is that the defendant had a duty to warn of dangers associate[d] with its products."[32] "The manufacturer's duty to warn is dependent on whether it had knowledge of the hazards associated with its product."[33] Proof of actual or constructive knowledge is sufficient to overcome a manufacturer's motion for summary judgment.[34] The manufacturer's knowledge "is a function of what a reasonably prudent individual would have known under the pertinent circumstances at the time in question."[35]

---

[31] *See, e.g., In re Asbestos Litig.*, 799 A.2d 1151 (Del. 2002) (holding there was insufficient evidence of manufacturer's knowledge of asbestos dangers in its product to impose duty to warn plaintiff).

[32] *Wilkerson v. Am. Honda Motor Co., Inc.*, 2008 WL 162522, at *2 (Del. Super. Jan. 17, 2008) (quoting *In re Asbestos Litig.*, 799 A.2d at 1152).

[33] *In re Asbestos Litig.*, 799 A.2d at 1152.

[34] *See id.* at 1152-53 (citing *Graham v. Pittsburgh Corning Corp.*, 593 A.2d 567, 568 (Del. Super. 1990)).

[35] *Id.* at 1153 (citing *Graham*, 593 A.2d at 571).

Asbestos plaintiffs alleging a failure-to-warn theory of liability against a product manufacturer typically identify a duty of care arising under § 388 of the Restatement, entitled "Chattel Known to Be Dangerous for Intended Use."[36] Section 388 states:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other *or to be endangered by its probable use*, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.[37]

Asbestos claims alleging a duty of care under this section have been addressed by this Court in the context of summary judgment.[38]

---

[36] RESTATEMENT (SECOND) OF TORTS § 388 (1965). *See, e.g.*, *Wilkerson*, 2008 WL 162522, at *1-2.

[37] § 388 (emphasis added).

[38] *See, e.g.*, *Wilkerson*, 2008 WL 162522.

Instead of arguing that Herty owed Plaintiff a duty of care under § 388, Plaintiff cursorily cites to a comment under this section and proceeds to discuss case law that is distinguishable from the facts of this case.[39] As a result, Plaintiff fails to provide ample authority to support her argument that this general duty of care extends, *ipso facto*, to the context of take-home asbestos exposure cases involving manufacturers.

## II. Defendant's Approach Under *Price* and *Riedel*: A Misfeasance/Nonfeasance Framework

The Court in *Price* held that an employer in Delaware does not owe a duty of care to its employee's spouse for failing to act to protect the spouse from an unreasonable risk of harm on its premises.[40] In so holding, the Court analyzed the case consistent with *Riedel*, finding the plaintiff-spouse alleged claims of

---

[39] *See* Plaintiff's Br. at 11 (quoting § 388, cmt. d). *See also id.* at 11-15 (discussing *Delmarva Power & Light Co. v. Burrows*, 435 A.2d 716 (Del. 1981) (affirming plaintiff verdict where plaintiff alleged defendant power company was negligent for failing to warn plaintiff of dangerousness of defendant's exposed power lines with which plaintiff came into contact); *Robbins v. Porter*, 2006 WL 1313858 (Del. Super. Apr. 19, 2006) (denying summary judgment to defendant in fatal one-car accident where plaintiff-administrator alleged defendant car dealer negligently controlled access to vehicle at its dealership before car was stolen and used in fatal crash two weeks later; court found duty owed by vehicle owners to third parties to secure their property from theft); *Kuczynski v. McLaughlin*, 835 A.2d 150 (Del. Super. 2003) (denying summary judgment to defendant boat operator who lead another boat that ultimately collided with plaintiff's boat; court held that "non-contact boat" owed duty to plaintiff to warn of impending collision and that defendant's negligent operation of his boat was proximate cause of plaintiff's injuries in collision)).

[40] *See generally Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162 (Del. 2011).

nonfeasance and no special relationship existed between the parties.[41] Tracing the Restatement §§ 282, 284, and 302, both Courts held that the employer's failure to warn or protect the employee's spouse represented nonfeasance.[42] The defendant-employers in both cases did not "create a new risk of harm" to the plaintiff-spouses, *i.e.*, misfeasance, but instead allegedly "failed to benefit [them] by interfering in [their] affairs," *i.e.*, nonfeasance.[43]

Both decisions appear to rest implicitly on the employer's role as a landowner and the employee's status as an invitee onto the employer's property. The employer's alleged failure to warn or make safe a dangerous condition on its property constituted alleged misfeasance towards its employees—those who physically entered onto the employer's property.[44] However, that same logic did not extend to the imposition of a duty on the employer to the employee's spouse, who neither entered onto, nor lived next to, the employer's facility.[45] Instead, the employer's alleged "conduct" towards the employee's spouse constituted claims of

---

[41] *See id.* at 168-69 ("The conduct Mrs. Price complains of here is indistinguishable from the conduct about which Mrs. Riedel complained.").

[42] *See Price*, 26 A.3d at 167-69; *Riedel v. ICI Americas Inc.*, 968 A.2d 17, 21-25 (Del. 2009).

[43] *Price*, 26 A.3d at 171 (Berger, J., dissenting) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 56, at 373 (5th ed. 1984)).

[44] *See Riedel*, 968 A.2d at 25.

[45] *See id.*

13

nonfeasance.[46] Both *Price* and *Riedel* Courts held that the employer did not engage in affirmative conduct that worked positive injury on the spouses of its employees; rather, they failed to act to protect a distant third party who never entered onto their property.[47]

In both cases, because the Supreme Court found that the plaintiff-spouses alleged claims of nonfeasance, the Court further determined that they failed to show a special relationship between themselves and their husbands' employers.[48] For instance, in *Riedel*, the plaintiff alleged that she stood in a special relationship with the defendant-employer under § 323 of the Restatement.[49] Section 323 states:

> One who undertakes . . . to render services to another which he should recognize as necessary for the protection of the other's person . . . is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.[50]

---

[46] *See id.*

[47] *See id.* at 22-23 (quoting RESTATEMENT (SECOND) OF TORTS § 314 cmt. c (1965)).

[48] *See Price*, 26 A.3d at 169-70; *Riedel*, 968 A.2d at 25-27.

[49] *See Riedel*, 968 A.2d at 25-26.

[50] RESTATEMENT (SECOND) OF TORTS § 323.

The Court rejected the plaintiff's use of § 323 because the *Riedel* plaintiff presented insufficient evidence of the employer's negligent undertaking.[51] The only evidence the plaintiff could marshal in support of her argument under § 323 was that the employer had issued publications to its employees regarding healthy home practices.[52] The Court found this fact insufficient proof of the employer's negligent undertaking.[53]

Courts that have addressed duty of care in this context have taken divergent positions on the issue of whether an employer owes a duty to warn the employee's spouse of the risks of take-home asbestos exposure. These courts, however, almost uniformly implement variant approaches from *Price* and *Riedel*.[54] For instance,

---

[51] *See Riedel*, 968 A.2d at 26-27.

[52] *See id.* at 25.

[53] *See id.* at 26-27.

[54] *See, e.g., Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439 (6th Cir. 2009) (applying general tort principles under Kentucky law; holding it was not reasonably foreseeable that asbestos at employer's worksite would pose hazard to plaintiff-son); *Dube v. Pittsburgh Corning*, 870 F.2d 790 (1st Cir. 1989) (applying general tort principles under Maine law; defendant-Navy was charged with knowledge of household asbestos exposure risk in 1964 and negligently failed to warn bystanders of asbestos exposure), *abrogated on other grounds, United States v. Gaubert*, 499 U.S. 315 (1991); *Gillen v. Boeing Co.*, 40 F.Supp.3d 534 (E.D. Pa. 2014) (applying Pennsylvania law; holding employer owed no duty of care to plaintiff's spouse based on absence of preexisting relationship between parties); *Kesner v. Superior Court*, 385 P.3d 283 (Cal. 2016) (holding employer owes duty of care to employee's spouse in take-home asbestos exposure case based on general tort principles and Restatement (Third) of Torts); *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092 (Ill. 2012) (reversing dismissal of complaint and permitting leave to amend to state facts regarding negligent failure to warn of risks of household exposure to asbestos transported home from railroad worker's jobsite); *Nelson v. Aurora Equip. Co.*, 909 N.E.2d 931 (Ill. App. Ct. 2009) (affirming summary judgment to employer; holding employer owed no premises liability duties to employees' relatives); *Chaisson v. Avondale Indus., Inc.*,

15

the California Supreme Court recently reviewed the landscape of take-home asbestos cases in this country in *Kesner v. Superior Court.*[55] The *Kesner* Court held that California recognizes an employer's duty to an employee's spouse based on general tort principles.[56] That Court's decision makes clear that this issue—an employer's duty of care to the employee's spouse—has received a tremendous amount of jurisprudential attention.[57] However, much of this attention focuses on whether the *employer* owes a duty of care to the employee's spouse, not whether

---

947 So.2d 171 (La. Ct. App. 2006) (finding employer owed duty of care to employee's wife to guard against her household exposure to asbestos); *In re Certified Question from Fourteenth District Court of Appeals of Texas*, 740 N.W.2d 206 (Mich. 2007) (answering certified question in negative; holding employer/property owner owed no duty of care to relative who never entered onto employer's property); *Olivo v. Owens-Illinois, Inc.*, 895 A.2d 1143 (N.J. 2006) (holding premises owner owed duty of care to employees' spouses based on traditional premises liability and foreseeability principles); *In re New York City Asbestos Litig.*, 840 N.E.2d 115 (N.Y. 2005) (holding employer/landowner owed no duty to protect or warn employees' spouses of take-home asbestos exposure); *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456 (Tex. Ct. App. 2007) (holding no duty based on absence of foreseeable risk of harm from household exposure during relevant period); *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347 (Tenn. 2008) (finding employer owed duty to those who came into close, regular contact with its employees' contaminated work clothes over extended period of time). *Cf. Georgia Pacific, LLC v. Farrar*, 69 A.3d 1028 (Md. 2013) (holding insufficient evidence presented of defendant-manufacturer's knowledge of risks of take-home asbestos exposure and feasibility of warning plaintiff-granddaughter of risks of such harm).

[55] 385 P.3d 283 (Cal. 2016).

[56] *Id.* at 288 ("We hold that the duty of employers and premises owners to exercise ordinary care in their use of asbestos includes preventing exposure to asbestos carried by the bodies and clothing of on-site workers. Where it is reasonably foreseeable that workers, their clothing, or personal effects will act as vectors carrying asbestos from the premises to household members, employers have a duty to take reasonable care to prevent this means of transmission.").

[57] *See supra*, note 54 (collecting cases).

the *manufacturer* of a product—supplied to the employer and transported home by the employee—involves the same analysis.

Notwithstanding how other jurisdictions address legal duty of care in the context of the employer-employee's spouse situation, Delaware law on this issue is manifest under *Price*: the employer owes no duty of care for failing to take steps to protect the employee's spouse from a dangerous condition on its property and transported home unless the plaintiff identifies a special relationship between the parties.[58] Accordingly, if the rationale of *Price* applies to this case, Plaintiff must overcome this misfeasance/nonfeasance framework before her negligence claims may proceed beyond summary judgment.

## III. *Price* and *Riedel* Apply to Take-Home Asbestos Cases Involving Manufacturers Who Supply Products to the Employee's Worksite

The Court finds that the analytical framework implemented in *Price* and *Riedel* is equally applicable to the facts of the present case. Those cases involved analogous claims of take-home asbestos exposure asserted by a spouse against her husband's employer. The key difference in this case—that Herty is a manufacturer and not Plaintiff's husband's employer—undermines, rather than bolsters,

---

[58] *See generally Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162 (Del. 2011). As discussed below, however, this Court need not analyze the special relationship considerations under § 323 in this case because Plaintiff does not argue, in the alternative, that she stood in a special relationship with Herty, nor did she produce any evidence in support of this position. *See infra* (discussing absence of evidence on special relationship).

Plaintiff's contention that *Price* and *Riedel* are distinguishable. This is clear when Plaintiff's argument is outlined to its logical conclusion.

A plaintiff, such as Mrs. Ramsey, cannot state a valid negligence claim against her husband's employer, Haveg, without first identifying either: (1) the employer's misfeasance; or (2) the employer's nonfeasance and an associated special relationship. Under *Price*, where the employer fails to take any steps to protect the employee's spouse and simply permits the employee to leave with asbestos debris on his uniform, the employer owes no duty of care to the spouse. However, applying Plaintiff's argument, that same plaintiff could state a valid claim against the manufacturers who supplied the asbestos product to the employer. Thus, the defendant with a closer relationship to the plaintiff—the employer—in that scenario owes no duty of care to the plaintiff, while a distant third party—the manufacturer—would be held to a general duty of care.

Contrary to Plaintiff's assertion, this finding does not re-impose the restrictive notions of privity for manufacturers in products liability actions.[59] Instead, applying *Price* and *Riedel*'s misfeasance/nonfeasance approach to take-home asbestos cases involving manufacturers who supplied products to the relevant worksite recognizes the paradoxical result were the Court to decide that general theories of tort liability apply to such claims. The effect of applying the

---

[59] *See* Plaintiff's Br. at 8.

latter, as Plaintiff suggests, would serve as an end-run around the decisions in *Price* and *Riedel* for all those except the employer. The Court declines to adopt an approach that would lead to such a result. Accordingly, this Court will now apply the analysis in *Price* and *Riedel* to the present Motion.

## IV. Plaintiff Alleges Claims of Nonfeasance

Distilled to their essence, Plaintiff's allegations epitomize nonfeasance. Plaintiff alleges Herty, among other manufacturers: "Chose not to adequately warn [Plaintiff];" "Chose not to adequately test, research and investigate;" "Chose not to adequately package, distribute and use [its product];" and "Chose not to take adequate steps to remedy [its alleged] failure[s]."[60] These allegations functionally mirror the allegations in *Price* and *Riedel*.

For instance, in *Price*, the Court held that any amendment to the plaintiff's complaint would be futile because the plaintiff's allegations, "stripped of all reformatory recharacterization," alleged claims of nonfeasance.[61] The Court then listed the unadorned allegations in *Price*:

> (1) Mr. Price, as an employee of DuPont, worked with and around products containing asbestos for 34 years, (2) asbestos fibers settled on his skin, clothing, and vehicle; (3) DuPont did not provide locker rooms, uniforms, or warnings to the Prices regarding the dangers of asbestos,

---

[60] Complaint at ¶ 16.

[61] *Price*, 26 A.3d at 169.

19

(4) DuPont did not prevent Mr. Price from transporting the asbestos fibers home on his skin, clothing, and vehicle, and (5) Mrs. Price, because she lived with Mr. Price and washed his clothes, developed several diseases from her exposure to the asbestos he brought home from work.[62]

These allegations, the Court held, were "pure nonfeasance—nothing more."[63]

Similarly, Plaintiff alleges: (1) Mr. Ramsey, an employee of Haveg, "worked with and around products containing asbestos for" four years;[64] (2) "asbestos fibers settled on his . . . clothing;" (3) Herty did nothing to warn Mr. Ramsey of the "dangers of [take-home] asbestos" exposure; (4) Herty "did not prevent Mr. [Ramsey] from transporting the asbestos fibers home on his . . . clothing;" and (5) "Mrs. [Ramsey], because she lived with Mr. [Ramsey] and washed his clothes, developed [lung cancer] from her exposure to the asbestos he brought home from work."

As discussed above, Mrs. Ramsey's case recasts the allegations in *Price* and *Riedel*, but stretches them one step further. Now, instead of the employer's nonfeasance, Plaintiff alleges that Herty provided her husband's employer with an asbestos-containing product and failed to act in essentially the same manner as

---

[62] *Id.*

[63] *Id.*

[64] Assuming his alleged exposure to Herty's product was from 1976-1980, as the parties assumed for purposes of this Motion.

DuPont did in *Price*. Under Delaware law, her allegations still ring as nonfeasance: Herty's failure to take steps to protect a third party.

Since the Court finds that Plaintiff alleges claims of nonfeasance, Plaintiff must identify the existence of a special relationship between herself and Herty before liability may be imposed for Herty's alleged nonfeasance.

## V. No Special Relationship Exists Between Herty and Plaintiff

There are several legally cognizable special relationships outlined in the Restatement. These include: "common carriers, innkeepers, and possessors of land who hold [the land] open to the public."[65] The plaintiffs in *Riedel* and *Price* alleged a special relationship under § 323.[66] In this case, however, Plaintiff fails to identify any legally cognizable special relationship between herself and Herty in the Restatement. Therefore, because Plaintiff has failed to present any evidence sufficient to rebut Herty's argument that no genuine issue of material fact exists on this issue, summary judgment is appropriate.[67] Accordingly, the Court finds that Herty has met its burden of proving that no duty of care exists between the parties and Herty is entitled to summary judgment on this issue.

---

[65] *Riedel v. ICI Americas Inc.*, 968 A.2d 17, 26 & n.26 (Del. 2009) (citing RESTATEMENT (SECOND) OF TORTS § 314A)).

[66] *See id.* at 25-27. *See also Price*, 26 A.3d at 169-70.

[67] *Cf. In re Asbestos Litig.*, 2007 WL 2410879, at *4 (Del. Super. Aug. 27, 2007) (discussing litigant's failure to raise issue in text of opening brief as waiver of issue on summary judgment).

## CONCLUSION

The Court finds that Herty owed no duty of care to Plaintiff consistent with the analysis in *Price* and *Riedel*. When a manufacturer provides an asbestos-containing product to an employer's worksite and debris from the product is transported home by the employee, the plaintiff must identify evidence of either: (1) misfeasance; or (2) nonfeasance with an associated special relationship. Where claims of nonfeasance are alleged and the plaintiff cannot put forth evidence of a special relationship—such as in the case *sub judice*—no duty of care exists between the parties and no civil liability may arise.

**IT IS SO ORDERED** that Defendant Herty's Motion for Summary Judgment is **GRANTED**.

_____
Vivian L. Medinilla
Judge

cc:    All Counsel via File&Serve

22